## No. 11,340.

INDIAN CREEK COAL MINING Co. *v.* HOME SAVINGS AND MERCHANTS BANK, TRUSTEE, ET AL.

Decided September 20, 1926.

Action to foreclose trust deed and distribute funds. Judgment for plaintiffs.

## *Reversed.*

1. LANDLORD AND TENANT—*Lease—Forfeiture.* The grantee of land cannot forfeit a lease on the property which his grantor could not.

2. *Lease—Forfeiture.* A purchaser of the reversion after condition broken, cannot forfeit for such breach.

3. *Lease—Forfeiture—Waiver.* The acceptance of reduced rent after a breach of the conditions of a lease respecting payment of rents and royalties, waives a forfeiture.

4. *Lease—Consideration.* An agreement by the owners of property that a sub-lessee might retain the property, by paying certain rent, in case the original lease was forfeited or cancelled, under the facts disclosed, held to be based on a sufficient consideration.

5. *Lease—Rents.* Purchaser of land subject to a lease held entitled to the rents and royalties payable thereunder.

6.      *Lease—Royalties—Waiver.*   The purchaser of mining property held bound by a waiver of royalties on the part of its grantor.

7.      *Lease—Improvements.*   A landlord cannot claim ownership of improvements on the leased premises where his lease gave him a lien only, to secure payment of royalties, the lien clause being in effect a mortgage.

8.      *Lease—Royalties.*   A verbal agreement between the owner and lessee of property that the former would accept less than the minimum royalties specified in the lease, held valid as to all royalties past due at the time of the agreement and to all for which the modified rate was subsequently adopted.

9.      *Lease—Improvements—Lien.*   Where it was agreed that improvements on leased premises should be security for the payment of royalties thereon, the owner could not by forfeiture take possession of the improvements and in addition have his royalties and rents out of a fund derived from a sale of other property by a trustee.

10.  CONTRACTS—*Construction.*   Bill of sale of personalty and a lease given at the same time and as a part of the same transaction, held, under the facts disclosed, to give the lessor the superior right to the personalty under a mortgage clause contained in the lease, as against other claimants.

11.  MORTGAGE—*After-acquired Property—Lien.*   Under an after-acquired property clause in a mortgage, the mortgage grasps only what the mortgagor gets, and takes subject to all reservations in the grant to him, and all liens and other incumbrances granted by him as a part of his transaction of purchase.

12.  LANDLORD AND TENANT—*Lease—Lien.*   Lien of a mortgage clause in a lease, under the facts disclosed, held superior to the claimed liens of other creditors.

13.  APPEAL AND ERROR—*No Objection Below.*   Where no objection or exception is reserved to the absence of a redemption provision in a court decree for the sale of property, the question will not be considered on review.

*Error to the District Court of the City and County of Denver, Hon. George F. Dunklee, Judge.*

Messrs. BARTELS & BLOOD, for plaintiff in error.

Mr. CHARLES F. MORRIS, Mr. CHARLES H. HAINES, Mr. WILBUR F. DENIOUS, Mr. HUDSON MOORE, for defendants in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

THE defendant in error bank, trustee in a corporate trust deed given by the defendant in error, the Routt-Pinnacle Company, to secure its bonds, brought suit to foreclose and had a decree which directed a sale, marshaled the liens and directed their payment. The court gave the American Company a judgment for $3,000, the bank $100,000, Morris $16,000, Hendrie & Bolthoff $1,800, the Indian Creek Company, $6,000, and after quieting title in the American Company to six forty-acre tracts, hereinafter mentioned, ordered certain real estate, with which we are not concerned, to be sold, also a large amount of coal mining equipment and personal property, including the coal mining equipment and personal property on the so-called McDowell forty, and the proceeds, after costs, expenses and taxes, to be paid on the claims in the above order. The defendant, the Indian Creek Coal Mining Company, brings error, and other defendants below assign cross error.

The following are the facts essential to a general comprehension of the case. We will later add such as are necessary to the particular understanding of each point in dispute. We abbreviate names and omit many facts which we regard as without consequence.

Mary E. and F. E. Johnson owned six forty-acre tracts of coal land or near coal land in Routt county, to-wit: the S. E. ¼ of N. E. ¼, the S. W. ¼ of N. E. ¼, the S. E. ¼ of N. W. ¼, the N. E. ¼ of S. W. ¼, the N. W. ¼ of S. E. ¼, and the N. E. ¼ of S. E. ¼, all in section 23, Tp. 6 N. R. 87 W, Routt county. April 5, 1915, they

leased them to the Allen Coal Company. The lease provided for royalties on coal mined, with a fixed minimum and forfeiture for nonpayment. This lease provided that machinery, buildings and equipment might be removed within 90 days after the termination of the lease in any way; that no machinery, buildings, improvements or equipment should be removed till all due to lessors was paid.

September 27, 1915, the Allen Company leased the first mentioned five of these six forties to one Miller, and December 9, 1915, Miller assigned his lease to the Routt-Pinnacle Company.

Under date of December 1, 1915, the Routt-Pinnacle Company issued its bonds secured by the mortgage above mentioned, which was the ordinary corporate mortgage, covering personal as well as real property to be acquired.

The remaining forty, the N. E. ¼ of S. E. ¼, called the McDowell forty, the Allen Company let to John McDowell by lease dated February 5, 1916, but before accepting this lease, in order to protect himself from loss of the improvements he was going to make on this forty, he obtained from the Johnsons the following agreement:

"Colorado Springs, Colorado,
2-7-1916.

"John McDowell,
 Dear Sir—
    We the undersigned, agree to allow you to retain NE¼ SE¼, Sec. 23, Tp. 6, N. R. 87 W., Routt Co., Colo., being 40 acres, for your use in mining your coal at a monthly rental of $100.00 @ Mo—payable monthly. To retain same as long as rent is paid & no longer.
    "The above is in case our lease on our 240 acres (of which above 40 acres is part) with the Allen Coal Co. is forfeited and cancelled."

This lease with said agreement attached was assigned by McDowell to the Indian Creek Company, plaintiff in error, and was recorded February 23, 1916.

November 13, 1918, the Indian Creek Company leased the McDowell forty to the Routt-Pinnacle Company with royalties, minimum and forfeiture conditions and a reservation of the personal property to secure payment and at the same time in consideration of $20,000 then and there paid, gave the latter company a bill of sale of the plant and improvement and all personal property now owned by it at said coal mine to be inventoried. The inventory was made and appears in evidence. The Routt-Pinnacle Company took possession and mingled the personal property so purchased with its other like property.

May 3, 1919, the Indian Creek Company agreed in writing to sell a cutting machine to the Routt-Pinnacle Company, retaining title until paid. The machine was delivered.

The Routt-Pinnacle Company failed to pay the Indian Creek Company its minimum royalties, and February 15, 1924, the latter company gave notice of its intention to cancel the lease, of which the bank had notice.

April 6, 1924, Morris delivered an execution against the Routt-Pinnacle Company to the sheriff. April 15, 1924, the Indian Creek Company took possession of the McDowell forty under claim of forfeiture and notified the Home Bank. The sufficiency of this possession is disputed. May 17, 1924, the Morris execution was levied. May 12, 1924, Hendrie & Bolthoff delivered an execution against the Routt-Pinnacle Company to the sheriff, which was levied August 4th, following.

In March, 1924, through one Brown Cannon, the American Coal and Power Company purchased the six forties from the Johnsons. The deed was delivered in July, 1924. The American Company, July 14, 1924, served sixty days' notice of intent to cancel the lease to the Allen Company for nonpayment of minimum royalties. Brown Cannon did not, however, contract to purchase the unpaid royalties till July.

The decree quieted the title to the six forties in the American Company on the ground that the Johnson lease to the Allen Company had been forfeited. In our former opinion we said that this was an error because it was the use of an equity power to enforce a forfeiture. It was then and is now argued that the forfeiture had been consummated by the American Company by taking possession, and that therefore the decree did not enforce it, but merely recognized the title thereby obtained. This state of affairs seems now to be conceded in the briefs as to all but the McDowell forty, and it is also now conceded by the trustee that this leasehold except as to the McDowell tract is worthless and has been cancelled, and we shall not consider them further.

As to the forfeiture of the lease of the Johnsons to the Allen Company on the McDowell tract, the plaintiff in error challenges its validity and we think rightly. Plaintiff in error has the rights which McDowell had including the agreement against forfeiture signed by the Johnsons and quoted above. The Johnsons could not wholly forfeit this lease and so their grantees could not. This contract was recorded with McDowell's lease, so all had notice of it and the American Company bought with notice. The American Company could not forfeit for defaults in rents or royalties made before its purchase. A purchaser of the reversion after condition broken cannot forfeit for such breach. *Vermont v. Soc. Prop. Gospel,* 2 Paine, 545, 28 Fed. Cas. No. 16,920. Again the evidence is undisputed that the Johnsons accepted a reduced rent after the breach which waives the forfeiture. If there were later breaches the contract controls so far as plaintiff in error and the bank are concerned.

It is argued that the quoted contract had no consideration, but the evidence shows that McDowell refused to lease from the Allen Company till the Johnsons signed it and that they signed it so that he would do so, to encourage and aid in the development of mines on adjoining lands. This constitutes a good consideration.

It follows that if the American Company, according to the above, has forfeited the lease at all, it holds title to the McDowell forty, subject to the lease to the Allen Company as modified by the Johnson-McDowell contract. That is, it is entitled to all royalties due it under the evidence up to the date of its forfeiture and to $100 per month thereafter by virtue of its lien on the buildings and improvements, etc., noticed more particularly below, it has a first claim for these sums on the fund, and the Indian Creek Company is entitled to possession of the forty subject to the mortgage.

The court rightly concluded that the American Company was bound by the Johnsons' waiver of royalty, whatever that waiver was. It does not determine the amount waived (doubtless because the finding of the amount due the American Company was deemed sufficient in this respect).

The American Company claims to own the buildings and equipment on the McDowell tract, but that cannot be true because of the Johnson-McDowell contract, and because the Johnson lease merely gives security for royalties not absolute ownership. It contained the following: ''7. Upon the termination of this lease in any way, the said party of the second part shall have ninety days in which to remove its property, including all buildings, machinery and other equipment, from said premises; But * * * not * * * props, etc., * * *; provided further that the said party of the second part shall not have the right to remove any of the said improvements, buildings, machinery and equipment from said premises unless it shall have theretofore paid to said parties of the first part all moneys due to the said parties of the first part under any of the provisions of this lease.''

Taking this paragraph as a whole the court was justified in treating it as a mortgage or form of security and likewise of the similar paragraph in the Indian Creek Company's lease to the Routt-Pinnacle Company; we

are, therefore, not in accord with the American Company's claim that they are the owners of such of the property as is described in the first sentence of this paragraph.

The American Company claims that the judgment in its favor, $3,000, was too small, that the undisputed evidence shows it to be entitled to a much greater sum. On this point we think the court was right in holding that the verbal agreement between the Johnsons and the Indian Creek Company to accept less than the minimum royalties on the Johnson lease was valid as to all royalties past due at the time of the verbal agreement and as to all royalties for which the modified rate was subsequently adopted. It is impossible for us to determine what those amounts are and we cannot say that the judgment of $3,000 is wrong.

In our former opinion we said that the royalties on the five forties could not be held superior to the Indian Creek Company's lien on the McDowell forty. We think we were wrong. Under the Johnson lease all the improvements and equipment on each and all the tracts was equally liable for unpaid royalties on the whole. We cannot tell from the record what the court did about this. We can only say, therefore, that the American Company may not by forfeiture take possession of the improvements, buildings, etc., if any, on the five forties, and in addition have royalties and rents for those forties out of the fund. As we show below, however, the Indian Creek Company is superior to the bank as to property sold by it to the Routt-Pinnacle Company.

The main remaining controversy is between the trustee bank and the Indian Creek Company over the personal property which was sold by the latter to the Routt-Pinnacle Company and came under the mortgage by force of its after-acquired clause. The trustee claims this property by force of C. L. secs. 5113 and 5114, which make void as against creditors any sale of goods not accompanied by immediate delivery and provides

that creditors shall include all persons who shall be creditors of the vendor while the goods shall remain in his possession. We cannot sanction this claim. The Routt-Pinnacle Company is not a vendor but a vendee and the goods all went into its possession.

The Indian Creek Company's bill of sale of its personal property to the Routt-Pinnacle Company was absolute in terms and was for the expressed consideration of $20,000, receipt of which was acknowledged, but in the lease between the same parties which was given at the same time and was a part of the same transaction, it is provided as follows: ''Upon termination of this lease in any way, the said party of the second part shall have ninety days in which to remove its property including all buildings, machinery and other equipment from said premises, * * * provided further, that the said party of the second part shall not have the right to remove any of the improvements, buildings, machinery and equipment from the said premises until it shall have paid to the party of the first part all moneys due unto the said party of the first part under any of the provisions of this lease, provided * * * that if * * * the same shall be terminated by the party of the first part on account of any default * * * , or in the event that the party of the second part shall, under the provisions of this lease, terminate the same, then * * * the residue of such equipment as is this day purchased by the party of the second part from the party of the first part shall revert to and become the property of the party of the first part, it being the intent of this clause that the party of the second part may, subject to the conditions of this clause, remove all such equipment as it may have on said premises in the event of a termination, save and except any equipment which may then remain out of certain equipment this day purchased by the party of the second part from the party of the first part, including the capital stock of the Consolidated Power and Electric company this day transferred by the party of the first part to the

party of the second part.'' As against the mortgage this clause gives the Indian Creek Company the superior right.

The Routt-Pinnacle Company acquired its interests after it had given the mortgage to the bank, and they are subject thereto only because of the provision therein that it shall attach to after-acquired property. In such case the mortgage grasps only what the mortgagor gets and takes subject to all the reservations in the grant to him and all liens and other incumbrances granted by him as a part of his transaction of purchase. The mortgagee gets a windfall and has no equity in it. The cases are very numerous. *United States v. N. O. R. R.*, 12 Wallace, 362, 20 L. Ed. 434, is enough. Even if the property comes into the hands of the mortgagor subject to a lien which is good against him, though for want of formalities it is not good against his subsequently attaching creditors and third persons, it is nevertheless prior to the lien of a mortgage under an after-acquired property clause. *Harris v. Youngstown Bridge Co.*, 90 Fed. 322, 33 C. C. A. 69, where many other cases are cited. The United States Court in Colorado has so held, in spite of the Chattel Mortgage Acts. *Frank v. D. & R. Co.*, 23 Fed. 123.

The lease from the Indian Creek Company to the Routt-Pinnacle Company was one transaction with the bill of sale of the personalty, and contained the above provision that the lessee should not remove any of the improvements, buildings, machinery or equipment until it had paid all moneys due under the provisions of the lease. The mortgage attached to the property subject to all this and to the right to terminate the lease for non-payment. The trustee claims that this is an enforcement of a forfeiture in equity and so erroneous, and cites *Wagner v. Way*, 70 Colo. 260, 199 Pac. 419. This, however, is not the enforcement of a forfeiture, but the enforcement of a lien to secure an indebtedness. If the decree were delivering the title to this personal property

to the Indian Creek Company to the entire exclusion of the mortgagee it would be enforcing a forfeiture. Foreclosure sale is historically and actually a method of relief from forfeiture.

The objection that the property on which the Indian Creek Company claims the lien is not sufficiently described in the lease is not tenable. The lease, bill of sale and inventory must be read together, the bill of sale and lease describe the property in general terms and the inventory specifically; the description is there full and complete. That the bill of sale and inventory are not recorded is not available to a mortgagee who claims under the after-acquired clause. *United States v. N. O. R. R., supra.* The bank, then, must pay whatever is secured by this reservation and take the property which secured it and sell the same under it, or it must be sold as was done under the equity powers of the court and the proceeds distributed, the Indian Creek Company taking precedence of the bank.

It is not necessary to decide the controversies between the execution creditors and the Indian Creek Company. The bank's mortgage is unquestionably superior to the executions and far exceeds any fund that has been or can be realized from the sale of the mortgaged property. The executions, therefore, whether superior or inferior to the Indian Creek Company's lien can never get anything; consequently the Indian Creek Company's claim must be paid before them. However, it is a lien upon but part of the property. If it is true, as we are now informed in the briefs, that the property has been sold en masse and the proceeds are in court, we think equity requires that the value of that part be ascertained and that amount awarded to the Indian Creek Company, not exceeding the amount of its judgment and that the balance go first to the American Company and then to the trustee bank.

Since it is unquestionable that the bank's claim to the personal property in dispute is superior and will exhaust the proceeds of the sale several times over, even though the execution creditors might have rights superior in equity to the Indian Creek Company, yet the effect of subordinating the Indian Creek Company to them in this case would be to give the Indian Creek Company's share to the mortgagee, whose claim as we have seen, is inferior, which would be manifestly inequitable.

The matter of the cutting machine seems to be a separate transaction. It was sold by the Indian Creek Company to the Routt-Pinnacle Company by a contract which is as follows: "Second, That the Routt-Pinnacle Coal Company will purchase from the Indian Creek Coal Mining Company, and The Indian Creek Coal Mining Company will sell to the Routt-Pinnacle Coal Company, the Sullivan cutting machine now in storage in Denver, Colorado, at the price of $3793.72, payable monthly as and when the royalties under the lease between the parties are payable at the rate of five cents per ton for each ton of coal mined by the party of the second part (Routt-Pinnacle Company), * * * until the amount of said purchase price together with interest at the rate of six per cent per annum on all deferred payments is fully paid, the machine to remain the property of the Indian Creek Coal Mining Company, until the purchase price with interest is fully paid."

By virtue of the after-acquired clause the mortgage attached to this machine on delivery to the Routt-Pinnacle Company, and the liens of the American Company likewise and its value will be eaten up by the bank's claim so that the execution creditors can get nothing. It may, then, be equitably left to the same rules as the other property sold by Indian Creek Company to the Routt-Pinnacle Company, and treated as a part of the remaining part thereof.

The Indian Creek Company, since the taking possession by the American Company has been entitled to the

possession of the McDowell tract and should be reimbursed for the loss of its use and occupation.

The court ordered land sold without redemption, but we do not find in the abstract any exception or objection thereto, nor that such question was raised by motion for a new trial, nor that the court dispensed with such motion.

As we view it, then, the proceeds of the property sold or to be sold should be disposed of as follows:

First. Costs and expenses of this proceeding. Second. Taxes due upon the property which was the source of the fund. Third. The amount due the American Company, either the amount found due in the decree, or such other amount as the court may determine, and out of this sum the Indian Creek Company should receive the value of the use and occupation of the McDowell tract from the time of the forfeiture of its lease to the Routt-Pinnacle Company, less one hundred dollars a month. In other words, the American Company should be charged the use and occupation and credited $100 a month as against the Indian Creek Company. Fourth. The judgment in favor of the Indian Creek Company to an amount not exceeding the value of what remains of what it sold to the Routt-Pinnacle Company, including the cutting machine. Fifth. The judgment in favor of the trustee for the bondholders. This will exhaust the fund.

The court is directed to conform to this opinion, taking further evidence, if it sees fit, and modifying its decree, accordingly, and the judgment is reversed for that purpose.

MR. CHIEF JUSTICE ALLEN not participating.