[No. 35152. Department one. May 5, 1960.]

GEORGE M. SIMONS *et al., Respondents,* v. LEE JAMES FINANCE COMPANY, *Appellant.*[1]

*Maurice Kadish,* for appellant.

*Whitmore, Vinton & Powers,* for respondents.

[1]Reported in 351 P. (2d) 507.

Donworth, J.—This is an appeal from a judgment in favor of respondents in the sum of five hundred dollars based upon findings that appellant corporation had converted certain chattels to its own use.

There is no disputed issue of fact in this case. The facts upon which the action is based may be summarized as follows:

On November 15, 1954, in Seattle, Washington, John Minnoch and June B. Minnoch, his wife, for valuable consideration executed and delivered a promissory note payable to appellant. As security for the note, Minnoch and wife simultaneously executed a chattel mortgage covering specifically described household furniture and appliances and containing an after-acquired property clause as follows:

" . . . That the lien of this mortgage shall apply to all after acquired property of like description of Mortgagor and all substitutions therefor."

This chattel mortgage was not filed of record in King county.

On December 8, 1956, in Hoquiam, Washington, Mrs. Minnoch purchased from respondents, on a conditional sale contract, a refrigerator, a range, and a combination washer-dryer. The conditional sale contract was not filed of record in either Grays Harbor county or in King county.

Subsequently, all of the personal property above referred to was removed from Hoquiam to Seattle.

On February 11, 1958, appellant foreclosed its chattel mortgage on a short-form mortgage foreclosure on the specifically described mortgaged property and also on the subsequently acquired refrigerator, range, and washer-dryer. Thereafter, all of the property was bid in and sold to appellant at a sheriff's sale.

On May 1, 1958, respondents, finding their conditional sale contract then in default, with a balance owing of $535.25, made demand upon appellant for delivery of the refrigerator, range, and washer-dryer. This demand was refused by appellant on May 7, 1958, whereupon respondents brought this action for conversion.

The case was tried to the court sitting without a jury. Findings of fact and conclusions of law were entered. In finding of fact No. 7, the trial court found that the fair-market value of the refrigerator, range, and washer-dryer as of the date of conversion was $500, and judgment was entered for respondent in that amount.

No error is assigned to the findings of fact made and entered by the trial court. The parties had stipulated as to the principal facts involved. The sole assignment of error is that the trial court erred in its conclusion of law that the title to the refrigerator, range, and washer-dryer did not pass to appellant by virtue of its after-acquired property clause in its chattel mortgage.

■ The chattels which gave rise to this action were sold by respondents to the Minnochs upon a conditional sale contract, by the terms of which title to the chattels remained in respondents until the full purchase price was paid. In *Community State Bank v. Martin*, 144 Wash. 483, 258 Pac. 498 (1927), this court quoted with approval the case of *United States v. New Orleans Railroad*, 79 U. S. 362, 20 L. Ed. 434, as follows:

" 'A mortgage intended to cover after-acquired property can only attach itself to such property in the condition in which it comes into the mortgagor's hands. If that property is already subject to mortgages or other liens, the general mortgage does not displace them, though they may be junior to it in point of time. *It only attaches to such interest as the mortgagor acquires*; . . .' " (Italics ours.)

■ Applying the rule just quoted to the case at bar, it is clear that respondent must prevail over appellant, since title to the chattels in question was retained by respondents as provided in the conditional sale contract, and appellant could not have acquired any greater interest therein than the vendees had at the time of the foreclosure sale.

■ However, appellant further contends that, under the provisions of RCW 63.12.010, the conditional sale of the chattels from respondents to the Minnochs was *absolute* as to it, because the conditional sale contract was never

filed in the county auditor's office in compliance with RCW 63.12.010, which reads, in part:

"All conditional sales of personal property . . . where the property is placed in the possession of the vendee, *shall be absolute as to all bona fide purchasers, pledgees, mortgagees, encumbrancers and subsequent creditors,* whether or not such creditors have or claim a lien upon such property, unless within ten days after the taking of possession by the vendee, a memorandum of such sale . . . shall be filed in the auditor's office of the county, wherein . . . the vendee resides. . . ." (Italics ours.)

Appellant takes the position that it is an "encumbrancer" within the meaning of the statute.

This identical contention was answered by this court in *Pratt v. Scandinavian-American Bank of Seattle,* 103 Wash. 134, 174 Pac. 462 (1918), wherein this court said:

"The general rule as to the rights of a mortgagee, with reference to after-acquired property and the limitations of the rule, finds clear exposition in the case of *Harris v. Youngstown Bridge Co.,* 90 Fed. 322, where the court says:

" 'It is well settled, since the decision of the supreme court of the United States in *Pennock v. Coe,* 23 How. 117, that one may execute a mortgage, valid at least in equity, upon property not in existence or not owned by him, the lien of which will immediately attach to the property when it shall come into existence, or become the property of the mortgagor; and this whether the title of the mortgagor is legal or equitable. The rule has been applied both to real and to personal property. [Citing authorities.] *The limitations of the rule are clearly drawn in the foregoing cases. The chief is that the mortgagee of after-acquired property is not a purchaser for value, and cannot acquire an interest by way of lien greater than that which the mortgagor has himself acquired.* The lien of the mortgage attaches to after-acquired property in the condition in which the mortgagor takes it from his vendor, and subject to all known liens and equities valid against the vendor, and also subject to all liens or equities valid against the vendee and mortgagor which arise in the act of purchase or acquisition, and therefore necessarily qualify its scope and extent. . . . In cases of conditional sales to the mortgagor, the mortgagee, under the after-acquired property clause, obtains a lien sub-

ject to the same defeasance or forfeiture as that to which the title of his mortgagor is subject. [Citations omitted.]'

"Appellants, under the after-acquired title clause of the Lane-Badgley contract, are situated in relation to the property in question just as the mortgagee in the case last mentioned was to the property involved therein. Appellants have no rights under the statute to the disputed property. They are neither purchasers nor incumbrancers, because the lumber company had no title to the property such as is necessary to support a sale or incumbrance, it being at all times, so far as appellants and the lumber company are concerned, the property of the vendor under the conditional sale contract, and, of course, there is no contention that appellants are subsequent creditors."

The case of *Bornstein & Sons v. Allen*, 127 Wash. 314, 220 Pac. 801 (1923), is also directly in point. In that case, a chattel mortgage with an after-acquired property clause was executed on June 19, 1920. On June 30, 1920, goods were sold to the mortgagor on a conditional sale contract which was not filed in the proper county. In April, 1922, the mortgagee foreclosed its chattel mortgage. Thereafter, all of the mortgagor's property, including the property subject to the conditional sale contract, was bid in and sold to the mortgagee at a sheriff's sale. The mortgagee subsequently disposed of the property by selling to a third party, and the conditional sale vendor brought an action of conversion against the mortgagee. This court, in sustaining a judgment for the conditional vendor for conversion, stated:

"The first attack upon the respondent's rights arises from the failure to file the conditional sale contract, under § 3790, Rem. Comp. Stat. [P. C. § 9767]. As between the parties to the contract, the failure to record did not affect its validity, and the appellants, in order to take advantage of its lack of record, must show that they are within one of the classes which the statute protects. *The statute does not protect creditors existing at the time the conditional sale was made.* [Citations omitted.] And if the sale was made on June 30, 1920, and the appellants' mortgage was for money lent on June 19, 1920, the appellants can derive no benefit under the statute by reason of the fact that the respondent's conditional sale contract was not placed of record." (Italics ours.)

Appellant claims that the case of *Reconstruction Finance Corp. v. Hambright*, 16 Wn. (2d) 81, 133 P. (2d) 278 (1943), governs the case at bar.

In that case we held that a prior unrecorded lien or interest in certain property took precedence over the lien of a judgment creditor purchasing under his own levy and sale, since the judgment creditor could acquire only such rights as the debtor had in the property at the time it was acquired.

The distinction between the *Reconstruction Finance* case, *supra*, and the one at bar is readily apparent. Here respondents are not claiming through the right, title, and interest of the Minnochs (the debtors and vendees), but rather through their *own* title, which they have held continuously since the execution of the conditional sale contract.

Finding no merit in appellant's contentions, the judgment of the trial court is affirmed.

WEAVER, C. J., MALLERY, OTT, and HUNTER, JJ., concur.