**MID–CONTINENT SUPPLY CO., a corporation, Plaintiff in Error,**

v.

**Don HARMAN, an individual d/b/a Don Harman Pipe and Supply, Defendant in Error.**

**No. 40291.**

Supreme Court of Oklahoma.

Feb. 18, 1964.

Rehearing Denied June 23, 1964.

Application for Leave to File Second Petition for Rehearing Denied July 28, 1964.

Young, Young & Young by Glenn A. Young, Sapulpa, for plaintiff in error.

Charles Hill Johns, Gomer Smith, Jr., James F. Howell, Oklahoma City, for defendant in error.

DAVISON, Justice.

The parties occupy the same relative position in this court as they did in the lower court and will be referred to by name or as plaintiff and defendant.

Mid-Continent Supply Co. brought this replevin action in the lower court against Don Harman d/b/a Don Harman Pipe and Supply to recover possession of a quantity of 4½" drill pipe alleged by plaintiff to be covered by its chattel mortgage. Pursuant to the replevin writ the sheriff took possession of 132 joints of pipe. Defendant's contention was that a purchase price chattel mortgage under which he claimed was a lien superior to that of plaintiff. The action became a contest as to which party had a prior lien. After trial to the court without a jury the trial court found that defendant had a valid equitable lien upon the pipe for $6263.90 that was superior to the chattel mortgage lien of plaintiff.

The record reflects that in 1959 the Flournoy-Haston Drilling Co., Inc. (hereinafter referred to as mortgagor) executed and delivered to plaintiff promissory notes and a chattel mortgage in renewal of existing

indebtedness and prior mortgage. The mortgage covered oil drilling equipment, including considerable drill pipe, located in McClain County, Oklahoma, where mortgagor was operating, and the mortgage was duly filed in that county. The mortgage had a provision whereby property after-acquired by the mortgagor and indebtedness to plaintiff for future sales of supplies and equipment to mortgagor was covered by the mortgage.

In August, 1960, the mortgagor was in need of drill pipe to continue drilling operations, but had no funds to pay cash for the same. Plaintiff refused to grant further credit to mortgagor for the purchase of such drill pipe. On August 25, 1960, defendant sold to mortgagor 202 joints (6122.32 ft.) of 4½" used drill pipe for $12,021.18 under an agreement whereby defendant would arrange for mortgagor to borrow from the Liberty National Bank & Trust Company the money mortgagor needed to pay for the pipe. Delivery started as the pipe was sonoscoped. There is some testimony that the bank was contacted on the above date, but mortgagor's note and chattel mortgage to the bank, covering the drill pipe, in the sum of $9405, payable in 9 monthly installments, are dated September 8, 1961. The mortgage was acknowledged September 10, and the loan was consummated and the proceeds paid to defendant September 12, 1960. Defendant had made the arrangement with the bank and the loan was completed only on the condition that defendant endorse the note. Defendant did endorse the note. The mortgagor paid the balance of about $2600 of the purchase price in cash.

It appears from the record that the testing by sonoscope and delivery of the pipe continued for a number of days after August 25, 1960, and that the pipe was hauled by mortgagor to the drill sites and used in its operations in McClain County. The chattel mortgage to the bank was never filed for record in McClain County.

In March, 1961, mortgagor told both plaintiff and defendant to pick up all the mortgaged property because mortgagor could not make further payments, and on the morning of March 23 plaintiff's employees and trucks went to the well in McClain County for that purpose. Defendant appeared about 2 hours later for the same purpose and, after identifying 132 joints of square-shouldered drill pipe as being that covered by the bank's mortgage, hauled the same to Oklahoma City. The following day the plaintiff, after discovering the bank's mortgage was not filed in McClain County, filed the instant replevin action. Mortgagor had made some payments on the bank note. Defendant had paid $1349.62 on the note prior to the replevin action. Defendant later paid the balance of the note and interest which amounts constituted total payments by defendant of $6263.90. This was the amount of the equitable lien granted by the court to defendant.

It was agreed that plaintiff had furnished some supplies on credit to mortgagor up to the time that the mortgaged property was repossessed.

The trial court in granting defendant a prior lien for the above amount made findings of fact embracing to a great extent the matters above set forth and further found that the series of events transpiring from the agreement of defendant to sell the pipe through the final act of closing the loan of the bank to mortgagor and payment to defendant were so close in point of time as to be an actual part of the entire sale transaction.

Plaintiff contends that its chattel mortgage with an after-acquired property clause therein is a lien upon such property that is superior to the unfiled chattel mortgage of the bank and that defendant's sale of the pipe to mortgagor was an unconditional sale that resulted in a present transfer of the title to the mortgagor. Both parties, in effect, concede that defendant in being subrogated to the rights of the bank would have no greater rights than the bank.

The after-acquired property clause in plaintiff's mortgage is controlled by the

provisions of 42 O.S.1961 § 8, which provides:

"An agreement may be made to create a 'lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case the lien agreed for attaches *from the time when the party agreeing to give it acquires an interest in the thing ot the extent of such interest.*" (Emphasis ours.)

In 10 Am.Jur., Chattel Mortgages, Sec. 205, it is stated:

"A mortgage given to cover after-acquired property covers such property only in the condition in which it comes into the hands of the mortgagor. If that property is already subject to mortgages or other liens at that time, the general mortgage does not displace them although they may be junior to it in point of time. It attaches only to such interest as the mortgagor acquires. If he purchases property and gives a mortgage for the purchase money, the bill of sale which he receives and the mortgage which he gives are regarded as one transaction, and the prior mortgage cannot displace such mortgage for the purchase money. In such cases, the first mortgagee does not hold the position of a purchaser or third person within the meaning of the recording acts and is not such a creditor as is protected by them, and a failure to register a mortgage given for the purchase price of the after-acquired property makes no difference. * * *"

This matter is the subject of an extensive annotation in 86 A.L.R.2d 1152. From these authorities it appears that our statute, supra, is in accord with the general law.

In Union National Bank of Bartlesville v. Leidecker Tool Co., 72 Okl. 121, 178 P. 690, one Mitchell had given a chattel mortgage to the bank with an after-acquired property clause and later, on September 9, and on October 10, 1912, Mitchell bought like property from Leidecker and as a part of the purchase agreed to give Liedecker

notes and mortgages on the property to secure the purchase price, in accordance with blanks furnished at the time, but execution "was delayed for some time thereafter." This court, in construing the above Sec. 8, held that the lien of the antecedent mortgage with the after-acquired property clause attached at the time of acquisition only to the extent of the interest acquired by the mortgagor; that the sale and the agreement to give a mortgage back were concurrent and were one and the same transaction; that the bank was not a purchaser or an encumbrancer for value; and that it was generally held that a mortgage with an "after-acquired property clause" attaches to the "after-acquired property" subject to all liens and equities against it at the time of its acquisition (citing cases), and stated:

"Where at the time of the sale of certain property and as a part of the transaction the buyer agrees to give to the seller a mortgage upon the property purchased to secure the purchase price thereof, the agreement is sufficient in equity to create an equitable lien upon the property, and is treated in equity as a mortgage thereon."

■ In the present case the mortgage was given to the bank and not to the defendant seller. However, this factual difference does not make the Leidecker case inapplicable, because in the present appeal the mortgage to the bank was agreed upon by mortgagor and defendant as an integral and necessary part of the transaction of purchase whereby mortgagor acquired the property and plaintiff's lien was subject to all liens granted by mortgagor as a part of his transaction of purchase. See Simons v. Lee James Finance Co., 56 Wash.2d 234, 351 P.2d 507, 86 A.L.R.2d 1147, and Indian Creek Coal Mining Co. v. Home Savings & Merchants' Bank, 80 Colo. 96, 249 P. 499, 502.

■ It is our conclusion that the trial court's finding that the agreement of mortgagor and defendant and the series of acts

pursuant thereto in connection with the sale of the pipe were a part of the entire sale transaction is amply supported by the evidence, and that the granting of a prior lien to defendant was correct.

Plaintiff cites Edge v. Smith, Okl., 284 P.2d 711, 53 A.L.R.2d 929, for the proposition that under the filing statute, 46 O.S. 1961 § 57, the unrecorded mortgage to the bank was void as against plaintiff as a subsequent mortgagee, for value, without notice. The case is not in point. The cited statute (42 O.S.1961 § 8) limited the lien of plaintiff under the after-acquired property clause to the extent of the mortgagor's interest in such property and the Leidecker case, supra, terms one in the position of plaintiff as not being an encumbrancer for value. In this connection plaintiff calls attention to the fact that plaintiff furnished mortgagor supplies to the date of repossession. Under the provisions of its mortgage this was at the option of plaintiff and the lien of the mortgage covered this indebtedness. Nowhere in the record do we find any evidence or inference that plaintiff altered its position to its prejudice in reliance on the acquisition of the pipe. Plaintiff's security was not diminished nor affected, unless perhaps it was enhanced by acquiring a lien upon the pipe, subject to the bank's lien now held by defendant. Union National Bank of Bartlesville v. Leidecker Tool Co., supra.

Plaintiff also makes the contention that the pipe that is the subject of the replevin was not identified as being a part of that sold by defendant. The evidence on this was conflicting. The evidence did not establish that the pipe was a part of that originally mortgaged to plaintiff. The mortgage to the bank does not describe the pipe as being of the square shoulder variety, but the evidence shows that it was that type. It was testified that the 202 joints of pipe was all hauled to McClain County for use there in place of other like pipe that had worn out. The evidence was sufficient for the court to find that the 132 joints of square shoulder variety pipe was

the pipe which defendant had sold to mortgagor.

In granting the lien to defendant the trial court of necessity found that the pipe was a part of that sold by defendant to the mortgagor. From our examination of the record we conclude that there is evidence reasonably supporting such finding.

Affirmed.

HALLEY, V. C. J., and WELCH, JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.