411 P.2d 457

SCHATT–AJAX INDUSTRIES, a corporation, Appellant,

v.

Ed CHURCHILL and Effie M. Churchill, husband and wife, dba Wright's Restaurant, Appellees.

No. I CA–CIV 98.

Court of Appeals of Arizona.

March 2, 1966.

Barry G. Crown, Phoenix, for appellant.

Hughes & Hughes, by Coit I. Hughes, Phoenix, for appellees.

DONOFRIO, Judge.

This is an appeal by Schatt-Ajax Industries, plaintiff below, from a judgment in favor of Ed Churchill and his wife who were defendants. The trial was before the court.

The Churchills, who will also be referred to as defendants, were the owners of a restaurant business at 1438 East McDowell Road in the City of Phoenix. They sold their business, together with the furniture, fixtures and equipment to Gary Wright and his wife on February 10, 1960, retaining the lease on the building and subletting to the buyers. The Wrights executed a chattel mortgage covering all the furniture, fixtures and equipment in favor of the Churchills to secure the unpaid purchase price of $23,250.00. The chattel mortgage did not contain an "after-acquired property" clause. The mortgage was filed of record February 29, 1960.

The Wrights in undertaking to remodel the premises obtained the services of plaintiff to do what was called a "redesigning" job. This consisted of reupholstering the booths, stools, benches and furnishing certain equipment. There was evidence that when plaintiff began the work four of the booths had been removed to the yard outside the building. These along with others which were bolted and nailed to the floor were removed by plaintiff to his place of business. Plaintiff later salvaged four of the booths by selling them to another person. The removed booths were replaced with new ones. The evidence was undisputed that two items, a double-deck oven priced $740 and stainless steel display case priced $283 furnished by plaintiff, were not attached to the building except for the usual plumbing connections.

On April 9, 1960 the plaintiff as seller and the Wrights as buyers executed a conditional sales contract which was duly filed of record, wherein plaintiff reserved title to all of the items involved in this litigation until the contract price of $4,959.36 was paid. These were items which plaintiff either worked on or furnished as new or replaced items. The contract further provided that the chattels were not to become fixtures or attach to the premises until the purchase price was paid. The Wrights defaulted on their contract. Plaintiff brought action in three counts against the Wrights and Churchills. One count was in replevin seeking the property or its value, the other two were in conversion seeking a judgment in the amount of the unpaid balance of $3,740.16 as being the value of property converted, together with attorney's fees and costs. The Wrights defaulted on the action brought against them. The Churchills in their answer and counterclaim raised the pertinent issues that they had recovered a judgment in a separate action against the Wrights vesting title to the property in them as the result of a landlord's lien on the property, that the chattels had become fixed to the premises, and that their chattel mortgage was superior to plaintiff's conditional sales contract. Their counterclaim also alleged that plaintiff had wrongfully and maliciously converted the property and asked for both actual and punitive damages. The court rendered judgment against the plaintiff on its complaint and against the defendants on their counterclaim.

At the outset it becomes necessary to determine certain questions of law.

First, is whether the landlord's lien for rent extends to personal property which is subject to a conditional sales contract. In order to answer this question we must determine what interest in the property the tenant brought on the leased premises, the whole of the property or the interest remaining after the conditional seller's inter-

est. Other jurisdictions that have considered the question have ruled that it is the interest remaining after the conditional seller's interest, Stern Co. of Washington, v. Rosenberg, 67 App.D.C. 99, 89 F.2d 843 (1937); Motor Credit Corp. v. Ray Guy's Trailer Court, 6 N.J.Super. 563, 70 A.2d 102 (1949); Haverty Furniture Co., Inc. of Charleston v. Worthy, 241 S.C. 369, 128 S.E.2d 707 (1962), and we believe this to be a sound rule to adopt for Arizona. See also Annotation in 45 A.L.R. 949.

■ Applying the above principles to the instant case we hold the landlord's lien claimed by defendants is not superior to the conditional sales contract and can therefore be disregarded.

■ Next, where the owner of personal property, in mortgaging the same, does not include a clause expressly covering personalty after-acquired by him, and thereafter he conditionally purchases other personalty, can the mortgagee claim a superior right to the after-acquired personalty and defeat the conditional seller's reservation of title to said property? The answer is no. 15 Am.Jur.2d, Chattel Mortgages, § 101, p. 278 and § 163, p. 332. Kastner v. Fashion Livery Co., 10 Ariz. 23, 85 P. 120 (1906); Babbitt and Cowden Livestock Co. v. Hooker, 28 Ariz. 263, 236 P. 722 (1925). A chattel mortgage cannot attach itself to property subsequently purchased by the mortgagor on a conditional sales contract. Simons v. Lee James Finance Company, 56 Wash.2d 234, 351 P.2d 507, 86 A.L.R.2d 1147 (1960).

■ However the chattel mortgage would be superior to all items covered by the chattel mortgage remaining on the premises even though upholstered and refinished by plaintiff. The chattel mortgage was of record and the plaintiff should have inquired of the mortgagee before doing the work. A mortgage duly recorded bespeaks notice. When he failed to make inquiry as to title he did so at his peril. We express no opinion as to whether a repairman's lien would exist under these circumstances.

We next consider the booths sold under the conditional sales contract that replaced similar booths that were covered by defendants' chattel mortgage, plaintiff appropriating the old ones to his own use. ◦

There is much in the briefs and argument of counsel that the chattels had become fixed to the land. We do not feel that this issue need be determined by the Court since defendant has considered these items as personalty in his chattel mortgage. Defendant can hardly urge without. inconsistency that those booths replacing the booths covered under the chattel mortgage have for some reason become fixtures to defeat the conditional seller's interest; and then, having done that, somehow again bring them within the chattel mortgage. See Annotation 60 A.L.R.2d § 6, p. 1224. What we have heretofore said concerning notice in the instance of the chattel mortgage is equally applicable in connection with the conditional sales contract.

■ It is our conclusion that the value of the old booths be ascertained, taking into consideration any value in place attributable to the booths, and that this amount be a prior lien upon the new booths installed by plaintiff. The value of the new booths which have replaced the old booths is to be ascertained pursuant to A.R.S. § 12–1307 to § 12–1310 inclusive, by taking into consideration their value in place at the time of the bringing of the action. As an alternative, the new booths could be sold and the value of the replaced booths, as ascertained above, be a prior claim against the proceeds therefrom, the excess, if any, to be returned to the conditional seller; or the person claiming the chattels under the chattel mortgage could retain the same paying the said excess so determined to the holder of the conditional sales contract in full satisfaction of his lien. This result will not allow a wrongdoer to profit from that wrong and places the prior chattel mortgagee in substantially the same position as originally. The chattel mortgage is adequately protected by this result.

■ This leaves the oven and showcase the only items superior to the chattel mortgage. Defendants urge that plaintiff failed in proving the status of these items during the trial. We cannot agree. Plaintiff's testimony was direct and positive that it furnished the items. There was no evidence that the items replaced anything. They were listed in the conditional sales contract and not listed in the chattel mortgage. They were items involved in the counterclaim which was urged and on which an adverse judgment was rendered. Since the the evidence was undisputed in this regard it was error for the court to find against the plaintiff as to these items.

Plaintiff having replevied the items and defendants having taken them back on redelivery bond and having thereafter disposed of same it became necessary to make proof of their value. Although the record is devoid of proof as to value of these items at the time of the action it cannot be attributed to the plaintiff since it was the court's ruling on defendants' objection which prohibited the evidence.

■ The court erred in not permitting Mr. Schatt to testify to the value as the foundation had been properly laid for his testimony as an expert in the field. He was further competent to testify as owner.

> "An owner may generally estimate the value of his real or personal property, and this is true whether he qualifies as an expert or not." Udall, Arizona Law of Evidence, § 120, p. 257.

He was the president of plaintiff corporation which was owned by himself and wife. It had been in business thirteen years equipping restaurants and he had personally equipped about twenty five restaurants. He testified he was familiar with the value of stoves, display cases, booths, tables and chairs used in restaurants and that he had inspected the property listed on the conditional sales contract right after it was installed, about two weeks later and as late as April 1962.

■ We are not able to agree with plaintiff's contention that the court erred in receiving evidence on defendants' counterclaim for the reason it was to be considered waived. Defendants initially appeared by filing an answer and following it with a counterclaim. Thereafter plaintiff filed a supplemental complaint and defendants filed an answer to the supplemental complaint. The counterclaim had not been withdrawn or stricken and remained. After the new answer was filed all parties recognized the existence of the counterclaim. Plaintiff filed his reply to the counterclaim and both parties acknowledged the existence and referred to it in their pre-trial memorandums. Defendants cannot be regarded as having waived their counterclaim as it had always been regarded as a separate instrument having been filed when the initial appearance was made.

■ The final matter to be considered is appellant's request that the redelivery bond which had been exonerated be reinstated. We have no authority to grant plaintiff's request. The trial court's exoneration of the redelivery bond has only prospective legal effect and we express no opinion as to whether it has any effect of terminating the surety's liability for those things which transpired prior to the order of exoneration.

Reversed in part, affirmed in part and remanded for proceedings not inconsistent with this opinion.

STEVENS, C. J., and CAMERON, J., concurring.