## HAMILTON v. PALMER. (No. 8561.)

(Court of Civil Appeals of Texas. Galveston. June 30, 1924. Rehearing Denied Oct. 9, 1924.)

1. **Sales ⬅234(5)—One fraudulently obtaining possession of automobile license receipt and invoice could pass no title.**

One who fraudulently obtained possession of automobile license receipt and invoice could not pass title to innocent purchaser.

2. **Estoppel ⬅118—Evidence held not to show any act of owner of automobile estopping him to claim title against purchaser from one obtaining possession fraudulently.**

Evidence *held* not to show any act on part of owner of automobile which would estop him from claiming title to automobile as against purchaser from one who had obtained possession fraudulently for purpose of selling it and appropriating portion of proceeds.

3. **Replevin ⬅11(3) — Demand unnecessary before suit against purchaser from one obtaining car fraudulently.**

Demand for possession of car was not necessary before suit against purchaser from one who obtained possession fraudulently for purpose of selling it and appropriating portion of proceeds without consent of owner.

4. **Replevin ⬅82—Verdict for $550 for rental value of automobile held not supported by evidence.**

Finding of jury of rental value of automobile while wrongfully withheld, at $550, *held* not supported by sufficient evidence.

5. **Replevin ⬅76—Damages recoverable for wrongful detention of automobile.**

Where defendant bought automobile in good faith from one without authority to sell it, plaintiff, suing for wrongful detention, is only entitled to recover actual damages, and, if car has been damaged by use, he is entitled to recover compensation for such damage, and in addition thereto any loss or damage he has sustained by being deprived of its use.

6. **Replevin ⬅76—Monthly rental charges fixed by those in rent-car business no basis for fixing damages for wrongful detention of car.**

Monthly rental charges, fixed by those in rent-car business for use of cars, cannot be taken as basis for fixing damage for wrongful detention of automobile, when there is no evidence to show to what extent plaintiff would have used car, or value of its use to him.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by M. E. Palmer against L. B. Hamilton and another. From an adverse judgment, the named defendant appeals. Affirmed in part and reversed and remanded in part.

Huggins, Kayser & Liddell, of Houston, for appellant.

Fulbright, Crooker & Freeman and Sam C. Polk, all of Houston, for appellee.

PLEASANTS, C. J. Appellee brought this suit against L. B. Hamilton and H. D. Gohlman to recover possession of a Buick automobile, alleged to have been converted by the defendants, and the sum of $50 per month from the date of the conversion as rental value of the automobile. Plaintiff prayed in the alternative for recovery of the value of the automobile at the time of its conversion, which is alleged to be the sum of $1,200.

The defendant Hamilton, appellant herein, answered alleging that he had purchased the automobile in good faith from one representing himself to be M. E. Palmer, and who was possessed of the title papers to the automobile, paying therefor the sum of $700 in cash. He further answered that the party from whom he purchased the automobile, and whom the plaintiff claimed to be one Arbore, was the agent of plaintiff and was placed in possession of the automobile by the plaintiff for the purpose of making a sale of the same, and that, if the said Arbore's agency was limited or restricted, the said Hamilton had no notice of such limitations and purchased the automobile in good faith. He also alleged that the plaintiff had negligently allowed the said Arbore to come into possession of the automobile and the indicia of title thereto, thereby enabling him to perpetrate the fraud upon defendant, and that the plaintiff was therefore estopped from questioning such sale. Defendant Hamilton also relied on the alleged laches of the plaintiff in not discovering the fraud worked upon him by Arbore as a ground of estoppel.

The defendant Gohlman prayed for recovery over against the defendant Hamilton for the sum of $828.92, alleging that he had purchased the automobile from his codefendant, and had paid such sum on the purchase price, and also prayed for the surrender and cancellation of three outstanding notes representing the remainder of the purchase price, which notes the defendant had executed and delivered to his codefendant, Hamilton.

The only issues submitted to the jury, and the answers of the jury to questions propounded by the court, are as follows:

"Special Issue No. 1. What was the reasonable value, if any, you find, of the use of the automobile in question from the time it was sold by Arbore to the defendant Hamilton up to this date? You will answer, stating the amount, if any, in dollars and cents. If you find none, so state."

To which the jury answered: "We, the jury, find for the plaintiff, N. E. Palmer, $550.00."

"Special Issue No. 2: What was the reasonable value, if any, you find, of the use of said automobile from the date it was purchased by the defendant Gohlman from defendant Hamilton up to this date? You will answer, stating the amount, if any, in dollars and cents. If you find none, so state."

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

To which the jury answered: "We, the jury, find no reasonable value for the use of the car as to the defendant Gohlman."

Upon the return of this verdict, the court rendered judgment in favor of the plaintiff against both defendants for the title and possession of the automobile, and against the defendant Hamilton for the sum of $550 "for the use of the automobile" from the date of its conversion to the date of the judgment.

The plaintiff having tendered and placed in the registry of the court the $550 recovered by him from the man Arbore, and which was a part of the money paid by defendant Hamilton in the purchase of the car from Arbore, the court adjudged that this $550 be applied to the payment of the amount awarded plaintiff against said defendant for the use of the car.

Judgment was also rendered for the defendant Gohlman on his cross-action against defendant Hamilton for the sum of $828.92, and canceling the notes executed by him in favor of Hamilton in part payment of the purchase money for the car.

The evidence shows that the plaintiff met one Arbore in the early part of May, 1922, and thereafter the two men and their families became very friendly; that the plaintiff owned the Buick automobile involved in this suit, and that the matter of its sale by Arbore for the plaintiff was for some time discussed between the two, that on or about June 22, 1922, after having agreed with Arbore upon a sale to one Reinhart, for a consideration of $1,200, of which amount $600 was to be cash and the remainder in two notes of $300 each, the plaintiff delivered the automobile to Arbore for the purpose of bringing the proposed purchaser to the plaintiff's place of business where the sale could be consummated. Having thus obtained possession of the car, Arbore took it to appellant's place of business and sold it to him for $700 cash. He then returned to appellee and told him that Reinhart could not leave his work and come to appellee's place of business to close the deal for the car, and that he (Arbore) had made the sale. He turned over to plaintiff $550 in cash and two notes for $300 each, signed Chas. A. Reinhart, and a mortgage on the car to secure the notes executed in the name of Reinhart, explaining that Reinhart did not have the additional $50 of the cash payment, but would give his note for that amount due in thirty days. Appellee accepted the money and the notes and placed the mortgage on record. Arbore did not have the $50 note when he turned over the cash and the other two notes to appellee, but shortly thereafter delivered to appellee a note for $50, signed Chas. A. Reinhart. Arbore had told appellee that Reinhart was a responsible man and was employed by the Lucey Manufacturing Company at Houston. Appellee had no reason to suspect that any of Arbore's statements in regard to the trans-

action were false. He left Houston two days after he had received the money and notes from Arbore and was away for two weeks. When he returned he heard that Arbore had been accused of wrongdoing in other transactions at Houston, and he then made inquiries as to Reinhart, and found that no such man was employed by the Lucey Manufacturing Company, and, as far as he has been able to ascertain, there is no such person. A few days after he made this discovery he saw his automobile on the street in the possession of defendant Gohlman, who informed him that he had bought the car from appellant Hamilton, who was a dealer in secondhand automobiles. He then went to see Hamilton and informed him of the facts and of his claim to a mortgage on the car for $600. Appellant claimed to own the car and made no offer to settle the matter in any way. Appellee afterwards placed the matter in the hands of his attorneys, who filed this suit in January, 1923.

With reference to the purchase of the car from Arbore, appellant testified.

"I can state to the jury just what happened in connection with the purchase of this Palmer car on June 22, 1922. A man drove up in front of my place and wanted to sell a secondhand Buick automobile, and I said, 'All right, we will drive around the block,' as I do with all cars I buy. We drove the car around probably two or three blocks, and came back and I said, 'How much do you want for this car?' He said, 'Well, what will you give me for it?' 'Well,' I said, 'It is your car; put your price on it, and if the price suits me I will buy it,' as I tell all people who want to sell me automobiles. 'Well,' he said, 'Will you give me $700?' I said, 'Yes, I will give you $700.' He said, 'All right'; and I said, 'Have you got the papers?'—he had gotten out of the car—and he said, 'No; I will have to go back home and get the papers.' He was gone, I judge, about 30 minutes, possibly a little longer—I don't know about that—and when he came back he had the license receipt for that year, which was necessary, and he also voluntarily brought the original invoice. I made out a bill of sale for it, and gave him a check."

The evidence further shows that appellee did not know when Arbore took his car to go for the fictitious purchaser, Reinhart, that he took with him the license receipt and the invoice for the car. Appellee testified that the night before Arbore took and sold his car he visited appellee at his home and appellee agreed with him on the terms of sale to Reinhart. He says.

"So when Arbore came (to plaintiff's house) he says, 'Well, I am going to bring Reinhart out in the morning sure;' and I said, 'All right;' and he says, 'Well, let's fix up the papers now so that when we get out on the job we won't have to spend too much time there;' and I said, 'Well, there is no papers to fix up;' and he says, 'Oh, yes; there is the license receipt to be signed over to Reinhart,' and I said, 'Yes; the license receipt is in my wife's name.'

So I sat down, made out the date of the transfer of the license receipt on the back of it, and my wife signed it. I was supposed to hold the license receipt until the next day when Reinhart came."

It is evident from appellee's testimony that Arbore took the license receipt with him at that time without appellee knowing that he did so. The evidence fails to show when Arbore got the invoice, but appellee is positive that he did not get it the night he got the license receipt.

Shortly after this occurrence Arbore was indicted for theft or swindling in three cases, in each of which his bond has been forfeited, and at the time of the trial he was a fugitive from justice.

[1, 2] Upon these facts the trial court properly held that there was no issue for the jury upon the question of appellee's right to recover the title and possession of the automobile. It goes without saying that Arbore, having fraudulently obtained possession of the automobile for the purpose of selling it and appropriating a portion of the proceeds of the sale without the consent of appellee, could not pass any right or title in the automobile by his bill of sale, it matters not how innocent the appellant may have been of any knowledge of Arbore's fraud, unless the appellee has done some act or can be charged with some omission which would' estop him from claiming title to the automobile against the appellant. We think the evidence wholly fails to raise the issue of estoppel.

[3] Arbore's possession of the car being fraudulent, and appellee having acquired no right of any kind by his purchase from Arbore, no demand on him by appellee for possession of the car was necessary to entitle appellee to maintain this suit. Dodd & Co. v. Arnold, 28 Tex. 98; Thomas & Co. v. Hawthorne (Tex. Civ. App.) 245 S. W. 966.

These conclusions dispose of appellant's assignments, except those complaining of the judgment for $550 as the rental value of the car during the time appellant wrongfully withheld it from appellee.

[4] Without setting out or discussing these assignments of error in detail, we think the verdict of the jury, if it can be construed as a finding that the rental value of the car was $550, is not supported by sufficient evidence.

The only evidence as to the rental value of the car is found in the testimony of Mr New, who qualified as an expert in the business of renting automobiles. In answer to the question of what in his opinion would be the reasonable rental value per month of a "five-passenger automobile that had been used nine months and was in good mechanical condition," he replied, "$100." He further stated that his estimate of rental value of the car was based on the rent-car business, that he knew nothing about this car or its present condition, and that there was no way for him to determine the amount of damage the car had sustained by its use by the defendants. He says:

"There is no way to determine the amount of damage done to the car. The way we handle our business is we base our depreciation on mileage, simply mark off four per cent. per month, practically fifty per cent. of the value of the car per year. * * * If the driver is a rough driver, of course the depreciation would be greater. However, if they took good care of the car the depreciation would be less. But as to the way we handle our cars, why we receive $100 a month rental on a car of that type, where we have an investment of $1,600 or $1,700, and we mark off 48% per year for depreciation. I don't know anything about this car you have here."

[5] It is manifest that this testimony furnishes no reasonable basis for fixing the damages sustained by appellee for the wrongful detention of the car by the appellant. The evidence shows that appellant bought the car in good faith, and appellee is only entitled to recover actual damages. If the car has been damaged by its use by appellant, he is entitled to recover compensation for such damage, and, in addition thereto, any loss or damage he has sustained by being deprived of its use.

[6] There is no evidence as to what, if any, damage the car has sustained, and we do not think that the monthly rental charges fixed by those in the rent-car business for the use of cars can be taken as a basis for fixing appellee's damage for being deprived of the use of his car, when there is no evidence to show to what extent he would have used the car or the value of its use to him.

In our opinion the judgment of the trial court in favor of appellee for the title and possession of the car should be affirmed, but that portion of the judgment awarding him $550 as the value of the use of the car should be reversed, and the cause remanded for a new trial upon the issue of damages.

Affirmed in part.

Reversed and remanded in part.