## GENERAL MOTORS ACCEPTANCE CORPORATION v. PETRILLO

[No. 272, September Term, 1968.]

*Decided May 29, 1969.*

670

*Motion for rehearing filed June 30, 1969; denied July 7, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*J. Bowie Lillard* for appellant.

*William F. Hickey* for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

Punitive damages is the leitmotiv; the back-drop is an action in replevin. The victim (GMAC) exhorts us to set aside the award ($5,000) of the trial judge, Moorman, J., (sitting without a jury) charging that his action was clearly erroneous. GMAC has other complaints but, by comparison, they are de minimis.

In November 1965 the appellee (Petrillo), at the time a resident of California, bought a new Chevrolet ¾ ton pickup truck. He made a down payment of $500 and executed a conditional contract of sale for the balance which, after adding the various charges, came to $3,414.60. Later on the contract was assigned to GMAC. Shortly thereafter he bought a "camper" from Northwestern Campers. This purchase was financed by the Bank of America. After fitting the camper to the bed of the pickup truck and fastening it thereto, Petrillo and his wife

loaded it with their belongings and together with their children set out for the home of Petrillo's father-in-law in Upper Marlboro, Maryland, arriving in February 1966. Removal from California without the "express permission of seller" was forbidden by the contract of sale.

On or about 18 February an employee of GMAC told Mrs. Petrillo the payments ($94.85 monthly) on the truck were in arrears. He left word with her to have her husband get in touch with him. On 20 February Petrillo and a representative of GMAC discussed his delinquency and it seems to have been agreed that GMAC would not repossess the truck if the payments were brought up to date. A memorandum was sent to the field representative telling him to hold up on the repossession pending receipt of the payments, but it did not reach him in time and late on 21 February (or early on 22 February) he drove the truck and camper from where it was parked on the street in front of the father-in-law's house to a lot owned by Call Carl, Inc. In the process he scraped against a mailbox and damaged the camper somewhat. Petrillo testified that the camper was locked prior to the repossession and it does not appear that thereafter the lock had been forced open. He testified also that he had left a spare tire in the camper which, it seems, had rolled around during the repossession.

Later in the day Petrillo and the GMAC man met at the Call Carl, Inc. lot. Petrillo produced the key to the camper, the door was opened and they looked inside. While it was said to be "messed up in disarray with clothing" only a gun (or guns) was missing. Petrillo had unlocked and entered the camper before the GMAC man arrived. An inventory was made, the camper was locked up and the key, by agreement, was delivered to Call Carl, Inc. The GMAC man offered to let Petrillo remove the contents of the camper but he refused.

On 28 February Petrillo began the replevin proceedings looking to the return of the truck and the camper and the recovery of both compensatory and punitive damages. On 7 March he obtained possession of the truck and the camper but a few weeks later GMAC filed a retorno habendo bond and regained possession of the truck. Sometime thereafter Bank of America allowed Petrillo to return the camper in satisfaction of the balance due by him.

The matter came on for trial before Judge Moorman on 19 February 1968. His opinion reflects a finding that all of Petrillo's property was returned to him except the truck and two revolvers, valued at $123.00, that the damages to the camper amounted to $264.20, that at the time of the repossession the balance due GMAC was $3,302.05, and that after the application of the proceeds of the public sale Petrillo owed GMAC $1,501.65. Judge Moorman found as a fact that:

(a) GMAC "lawfully repossessed the truck and lawfully sold it at public sale," which sale he ratified and approved.

(b) GMAC "unlawfully committed a trespass to the camper * * * and wrongfully, arbitrarily and maliciously took and detained it * * *."

(c) Petrillo was entitled to $387.20 compensatory damages.

(d) Petrillo was entitled to punitive damages in the amount of $5,000.00.

Upon the denial of its motion for a new trial and the subsequent entry of final judgment, GMAC noted its appeal to this Court. Only two of the contentions made by GMAC need to be dealt with. The first attacks the award of punitive damages. The second presents the notion that compensatory damages in an action of replevin can be recovered only for the value of the interference with the plaintiff's possession or for his loss of use of the chattel during the period of detention. We shall dispose of the second contention before moving on to the matter of punitive damages.

I.

"Replevin is an action *ex delicto* founded upon a tortious detention of chattels, for which damages may be allowed." *Fernandez v. Fernandez,* 214 Md. 519, 521 (1957). The verdict should award possession of the property and state separately its value and the damages, if any, for the detention thereof. Maryland Rule BQ49. It will be recalled that when GMAC took possession of the truck the camper was damaged in the process. Petrillo testified the cost of repairing it would have been $264.20. There was also evidence that the two guns,

valued at $123.00, were lost while the camper was in GMAC's possession. While heretofore we have not had occasion to hold that damages of this nature are recoverable in a replevin action, other jurisdictions appear to have done so. In *Multiplex Concrete Mach. Co. v. Saxer,* 310 Mich. 243, 17 N.W.2d 169, 171 (1945), it was stated:

> "Replevin is a possessory action, and plaintiff's damages in a replevin suit are limited to damages for the unlawful taking or unlawful detention or both. * * * Such *damages may include* compensation for loss of use of the property and *any actual injury to the property* * * *.*" (Emphasis added.)

*See also Aber v. Bratton,* 60 Mich. 357, 27 N. W. 564, 566 (1886). In *Bozeman Mortuary Ass'n v. Fairchild,* 260 Ky. 748, 86 S.W.2d 979, 980 (1935), the court stated that "if defendant during his possession has damaged the property the recovery * * * will be increased to that extent." In *Hoff v. Lester,* 31 Wash. 2d 937, 200 P. 2d 515, 519 (1948), the court said: "When the wrongful detention of equipment * * * is established, '* * * the damages for detention include the depreciation in the value of the property and the value of the use of the property to the owner. * * *' *Meyers v. Walker,* 173 Wash. 592, 596, 24 P. 2d 97, 99." And in *Rice v. Cassells,* 48 Colo. 73, 108 P. 1001, 1003 (1910), it was said that "injury to property as the result of its wrongful taking and detention by a defendant in a replevin action may be recovered when claimed in the complaint." *See also Cummings v. Badger Lumber Co.,* 130 Mo. App. 557, 109 S. W. 68 (1908); *Hamilton v. Palmer,* 265 S. W. 240 (Tex. Civ. App. 1924); 77 C.J.S. *Replevin* § 271 (1952). In the circumstances here present we think the award of compensatory damages was proper, *cf. McClung-Logan Equip. Co. v. Thomas,* 226 Md. 136 (1961), and we cannot say that the amount of Judge Moorman's award was clearly erroneous.

## II.

We have not found nor has anyone cited any decision of this Court in which the award of punitive damages in a replevin case has been considered. It is true that *McClung-Logan* started

out as a replevin case and that there was an award of punitive damages, but the damages were awarded to the defendant not in the replevin suit but in his counterclaim which sounded in trespass and conversion. While for reasons presently to be stated it is unnecessary for us to hold that the award of punitive damages is improper in a replevin action, we think what was said in *Philadelphia, Baltimore & Washington R.R. v. Green,* 110 Md. 32, 43-44 (1909), would be apposite if we should ever have occasion to so hold. There, Judge Burke, for the Court, said:

"* * * It appears to be well settled in this State that mere deliberateness and unnecessary force or violence is not the test of punitive damages. This Court in the case of *P. W. & B. R.R. Co. v. Hoeflich,* 62 Md. 307, has stated the rule under which punitive damages may be allowed in cases of this kind. In discussing a prayer substantially like the one we are considering, JUDGE ROBINSON said: 'The force and deliberation with which the wrongful act is done, are not necessarily the tests by which the question of punitive damages is to be determined. On the contrary, to entitle one to such damages there must be an element of fraud, or malice, or evil intent, or oppression entering into and forming part of the wrongful act. It is in such cases as these that exemplary or punitive damages are awarded as a punishment for the evil motive or intent with which the act is done, and as an example, or warning to others. But where the act, although wrongful in itself, is committed in the honest assertion of a supposed right, or in the discharge of duty, or without any evil or bad intention, there is no ground on which such damages can be awarded. In *Phila., Wilm. and Balt. Railroad Company v. Quigley,* 21 Howard, 202, 214, MR. JUSTICE CAMPBELL says: "Wherever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation

for the wrong committed against the aggrieved person. But the malice spoken of in this rule is not merely the doing of an unlawful or injurious act. The word implies that the act complained of was conceived in a spirit of mischief, or of criminal indifference to civil obligations." And in the still later case, in the same Court, of Milwaukee Railroad Company v. Arms et al., 91 U.S. 489, 493, MR. JUSTICE DAVIS said: "Redress commensurate to such injuries should be afforded. In ascertaining its extent, the jury may consider all the facts which relate to the wrongful act of the defendant, and its consequences to the plaintiff; but they are not at liberty to go farther, unless it was done wilfully, or was the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them * * * The tort is aggravated by the evil motive, and on this rests the rule of exemplary damages." We might multiply the cases on this subject if necessary, all concurring that exemplary damages are awarded as a punishment for the evil motive, or intention with which the unlawful act is done, and as a warning or example to others.' "

*See also Dennis v. Baltimore Transit Co.,* 189 Md. 610, 616-18 (1948) (false arrest); *Baltimore Transit Co. v. Faulkner,* 179 Md. 598, 602-03 (1941) (assault and battery); *Franklin Investment Co. v. Homburg,* 252 A. 2d 95, 98 (D. C. App. 1969) (repossession of automobile). If we appraise the conduct of GMAC's agents, in light of the criteria stated above by Judge Burke, and conclude that it could not support an award of punitive damages in an action of trespass and conversion, as in *McClung-Logan* for instance, then, it would seem to follow, neither can the award in the instant case be supported. In making such an appraisal it is important to keep in mind the provisions of the contract of sale set forth below:

"2. * * * Buyer * * * shall not, without express permission of seller, remove said property from the state * * *."

* * *

"6. In any of the following default events, viz., (1) default of any payment due hereunder, (2) failure to comply with any of the terms or conditions hereof * * * the seller shall have the right at his or its election to declare the unpaid balance * * * to be immediately due and payable. Further, in any such event, seller or any sheriff or other officer of the law may take immediate possession of said property without demand, including any equipment or accessories thereto; * * * Seller may take possession of any other property in the hereinbefore described motor vehicle at the time of repossession, wherever such other property may be therein, and hold the same for buyer at buyer's risk without liability on the part of seller * * *."

It is clear that Petrillo had two "default events" against him. He was at least one payment in arrears; he had removed the vehicle from California without permission. He said his wife had sent off a notice that they were leaving California but that cannot be equated with "express permission." There can be no doubt, as Judge Moorman found, that GMAC "lawfully repossessed the truck." We cannot agree, however, that it "maliciously" took the camper. It seems to us that the camper comes within the scope of the language of the contract giving GMAC the right "to take possession of *any other property*" (emphasis added) in the truck "wherever * * * [it] may be therein, and hold the same for buyer at buyer's risk." We see nothing fraudulent, malicious, evil or oppressive in the removal of the truck and the camper from where it was parked to the Call Carl, Inc. lot. Petrillo had been using the truck (with camper attached) for his private transportation and it does not appear that GMAC's man subjected it to any greater stresses and strains, except of course when he scraped against the mailbox; but, he said, he was entirely unaware of that incident. However negligent he may have been in this regard his action can hardly be called malicious, evil or oppressive. Both Petrillo and the trial judge make much of the fact that GMAC "never had any title to nor any interest in" the camper and the notion

that its agent "could easily have detached the camper" from the truck. As to the former, it is plain, GMAC had the right to "take possession of any other property in the * * * vehicle * * * and [to] hold the same for buyer at buyer's risk" which, of course, is exactly what it did. As to the latter there seems to be considerable doubt that the camper could have been "easily" detached at night, on a public street, by a man who was unfamiliar with the operation. What was done seems to us to have been the more prudent course to have followed and certainly free of any malice or oppression.

Judge Moorman, correctly we think, disposed of the complaint that GMAC had foregone its right to repossess the truck because "it had promised * * * [Petrillo] that it would not do so until it gave * * * [him] an opportunity to make the payments in default." He said "there * ** [was] no merit to this argument."

The only remaining circumstance upon which the trial judge appears to have relied to support the award of punitive damages is that "GMAC, after repossession of the truck [he said] offered to return * * * [it] if * * * [Petrillo] would make the payments in default," and give GMAC a general release. Petrillo refused, he continued, "because of the damages to his trailer [camper], the topsy-turvy condition of its contents and the missing guns." Petrillo seeks to equate this aspect of his case with the facts in *McClung-Logan*. We must reject this argument for the quite obvious reason that there is one important difference between *McClung-Logan* and the case at bar. In *McClung-Logan* the repossessing party had neither title nor the right to possession, to say nothing about the other strong evidence of malice and oppression. GMAC's demand for a release may well have been motivated by a conviction that the damage to the camper was not of its doing and that it was neither morally nor legally responsible for the "missing" pistols. One might say its attitude was a trifle hard-nosed but it was certainly not oppressive. Since the expressions "messed up—disarray—topsy-turvy condition" are at best only adjectival we must look to other evidence for some meaningful concept of the condition of the interior of the camper. The inventory of the contents, made by GMAC's agent and not disputed by Petrillo

(except for the pistols), strongly suggests that not only was there a place for everything but that everything was in its place.

The testimony indicates there was some fumbling around by GMAC arising out of its efforts to learn from its California office whether the contract covered the camper. However, we see nothing to suggest malice or oppression. By the time it was established that its contract covered only the truck Petrillo had replevied both truck and camper. It occurs to us that Petrillo had no standing to maintain the replevin of the truck since his default lost him the right to possess it. But since that question has not been raised we shall put it aside.

That Petrillo has lost his truck and his camper is the fault of no one but himself. Perhaps he was destined to lose them in any event. After all, one must pay the bill. Unfortunate also is the $1,501.65 deficiency judgment against him. He may find some consolation, however, when, in his own private accounting, he offsets, against the deficiency judgment, his compensatory damages and the value of his use of the truck.

In view of what has been said in this opinion we shall reverse the learned trial judge's finding that GMAC "unlawfully committed trespass to the camper * * * and wrongfully, arbitrarily and maliciously took and detained it" and his award of punitive damages. We shall affirm his other findings.

> *Affirmed in part and reversed in part.*
> *Case remanded for the entry of a judgment conformable with the views expressed in this opinion.*
> *Costs to be paid by appellant.*