### ASSOCIATES COMMERCIAL CORPORATION, Plaintiff,

v.

### Rodney O. WOOD, Defendant.

and

### MATSUKI INTERNATIONAL, INC. t/a Gene's Used Auto Parts & Recyclers, Defendant and Cross–Claim Plaintiff,

v.

### RYLYNS ENTERPRISES, INC. t/a Gude Drive Exxon, Cross–Claim Defendant.

### No. Civ. PJM 98–456.

United States District Court, D. Maryland.

Oct. 15, 1998.

Steven Neal Leitess, John Patrick Boland, Leitess, Leitess & Friedberg, P.C., Baltimore, MD, for Plaintiff.

Frank Morris, II, Landover, MD, Charles S. Rand, McKernon & Rand, Rockville, MD, for Defendant.

## OPINION

MESSITTE, District Judge.

### I.

Plaintiff Associates Commercial Corporation asks the Court to declare unconstitutional Section 25–210(b) of Maryland's Transportation Article dealing with abandoned vehicles. The Court agrees that the statute violates the Due Process Clause of the U.S. Constitution and will accordingly enter a summary judgment declaration to that effect.[1]

### II.

Associates, a Delaware corporation with its principal place of business in Irving, Texas, financed the purchase of certain vehicles by Rodney O. Wood, who resides in Montgomery County, Maryland. One of the vehicles was a 1989 Freightliner tractor which Associated had Wood execute a security agreement for and which it thereafter perfected by filing with the Maryland Motor Vehicle Administration.

Wood eventually defaulted on his obligation to Associates by failing to make payment as and when due but soon after commenced a voluntary bankruptcy petition pursuant to Chapter 7 of Title 11 of the Bankruptcy Code.[2] Associates filed a motion for relief from the automatic stay with the Bankruptcy Court which was granted in December of 1997. Wood thereafter retained the Freightliner by entering into new agreements with Associates concerning his obligations regarding the loan.

1. Under Maryland law, the Maryland Attorney General must be notified when, as part of any legal proceeding, a statute is alleged to be unconstitutional. Md.Code, Cts. and Jud. Proc. § 3–405(c). Plaintiff has stated that copies of the pleadings were sent to the Attorney General, but that no response was received. To the extent that this notice requirement applies to a federal court—a question which the Court does not decide—the Court finds that Plaintiff has met the requirement of that statute.

2. He subsequently converted the Chapter 7 case to a Chapter 13, then reconverted it to a case under Chapter 7.

On January 22 or 23, 1998, having experienced mechanical difficulties with the Freightliner, Wood parked it on the lot of Gude Drive Exxon station in Rockville. He returned to the Exxon station during the next two days to check on the vehicle but spoke to no employee at the station. When he returned to the station on January 24, the Freightliner was gone. An employee of Gude Drive Exxon informed him that Matsuki International Inc. t/a Gene's Used Auto Parts & Recyclers[3] had towed the vehicle earlier that day.

Gude Drive Exxon and Matsuki were acting pursuant to Section 25–210(b) of the Maryland Transportation Article which provides, in pertinent part, that any person on whose property a totally inoperable vehicle more than 8 years old has remained for more than 48 hours without the consent of the owner of the property may transfer the vehicle for scrap without a certificate of title or notification.[4]

Wood travelled to Matsuki's premises to pick up the vehicle but his request was refused. After he sought police assistance, Matsuki's agent, in the presence of the police officer, agreed that Wood could regain the possession of the Freightliner if he paid a towing and storage charge. But after the police officer left, Matsuki refused to comply with the agreement and offered to sell the Freightliner to Wood for considerably more than the towing and storage charge. Wood declined the offer.

Less than a week later, Associates learned that Matsuki had seized the Freightliner and was refusing to return it to Wood. Associates notified Wood that he was in default under the terms of the renegotiated security agreement and made demand upon Matsuki that it surrender the vehicle. Matsuki also refused to surrender it to Associates.

When further demands by Associates proved unsuccessful, this suit was commenced. The suit proceeds in several counts:

Count I—Replevin against Wood;

Count II—Replevin against Matsuki;

Count III—Detinue against Matsuki; and

Count IV—Request for declaratory relief regarding the constitutionality of the Maryland Transportation Article, Section 25–210(b).

At a show cause hearing conducted shortly after suit was filed, the Court granted a writ of replevin in favor of Associates which was required to post a surety bond in the amount of $25,000.

---

**3.** Associates did not verify the correct legal name of the towing company until this lawsuit was in progress.

**4.** Section 25–210 in its entirety reads:

(a) *Application of section.*—The following persons may transfer a vehicle under this section:

(1) Any person who possesses or on whose property any abandoned vehicle is found;

(2) Any person who owns a vehicle for which the certificate of title is defective, lost or destroyed; or

(3) Any agent designated and authorized by a government agency to remove an abandoned vehicle from public or private property.

(b) *Transfer without certificate of title or notification.*—Notwithstanding any other provision of this subtitle, if the vehicle is more than 8 years old and has no engine or otherwise is totally inoperable, any person described in subsection (a) of this section may transfer the vehicle to an automotive dismantler and recycler or scrap processor without a certificate of title and without following the notification procedures of §§ 25–204 and 25–205 of this subtitle.

(c) *Indemnity agreement.*—An automotive dismantler and recycler or scrap processor may require a person who transfer a vehicle under subsection (b) of this section, to execute an indemnity agreement on a form prescribed by the Administration.

(d) *Scrap processor to file agreement.*—In those cases described in subsection (b) of this section, an automotive dismantler and recycler or a scrap processor whose plant is physically located and operating in this State may file with the Administration the indemnity agreement described in subsection (c) of this section that identifies the vehicle and contains the name, address, and signature of the person delivering it. (An.Code 1957, art. 66 1/2, § 11–1002.2; 1977, ch. 14, § 2; 1980, ch. 732, § 2; 1986, ch. 324; 1987, ch. 11, § 1.)

An employee of Gude had signed an indemnification agreement authorizing Matsuki to remove the Freightliner from the station's lot. Matsuki has filed a cross-claim against Gude Exxon which, as of this writing, does not appear to have been served. In view of the Court's decision on the underlying claim, the cross-claim will be dismissed without prejudice. Md.Code, Transportation Article, § 25–210.

At or about the time it seized the Freightliner, Matsuki obtained a "salvage title" from the Maryland Motor Vehicle Administration which Matsuki contends makes it the owner of the vehicle.

For present purposes, Associates concedes that the Freightliner in fact qualified for treatment under the Abandoned Vehicle Statute, *i.e.* that it was parked for over 48 hours on private property without the consent of the owner of the property; that it was 8 years old or older at the time of the event; and that it was totally inoperable. The core of Associates' attack on the statute is that it provides for no pre- or post-seizure hearing with regard to ownership of the vehicle and as such denies Associates due process of law.

### III.

In *Huemmer v. Mayor and City Council of Ocean City,* 474 F.Supp. 704 (D.Md.1979), *aff'd* 632 F.2d 371 (4th Cir.1980), Judge Joseph H. Young of this Court held that the Ocean City ordinance relating to the impoundment of automobiles was unconstitutional because it failed to provide an opportunity to be heard at some time before the injury occasioned by the taking became final. 474 F.Supp. at 711. Affirming, the Fourth Circuit declared:

> The ordinance was manifestly defective, in that recovery of a removed vehicle was absolutely conditioned on payment of towing and storage charges. No opportunity was presented for notice and a hearing to establish whether or not the initial removal of the vehicle was rightful or wrongful. *See Stypmann v. City and Council of San Francisco,* 557 F.2d 1338 (9th Cir.1977).

*Huemmer,* 632 F.2d 371, 372 (1980).

Judge Young noted that "as defendant Ocean City acknowledges, its towing ordinance was modeled after the Maryland Abandoned Vehicle Statute which also fails to provide a hearing and has never been challenged constitutionally." 474 F.Supp. at 724. That challenge is now before the Court and the answer can be given unhesitatingly. Section 25–210(b) of The Maryland Abandoned Vehicle Statute fails to pass constitutional muster.

Most squarely on point is *Propert v. District of Columbia,* 948 F.2d 1327 (D.C.Cir. 1991). Plaintiff in that suit was the owner of an automobile that had been towed and destroyed pursuant to the District of Columbia's policy covering "junk" vehicles. The U.S. Court of Appeals found the lack of notice and a hearing before final deprivation of the property interest to be fatal to the District's policy. Judge Harry T. Edwards, writing for the Court, undertook a straightforward analysis which the Court finds appropriate to the present case.

■ There is a two step process in deciding the constitutional question presented— first, whether the plaintiff has asserted a property interest within the protection of the Due Process Clause and, if so, what process is due. As in *Propert,* it can hardly be doubted that Associates had and has a protected property interest in the vehicle. Its property deprivation is not *de minimis. Compare Lawton v. Steele,* 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385 (1894) (seizure of fishing nets without prior notice or hearing upheld where nets held to be of insignificant value). On the contrary, the parties concede that the Freightliner has market value of at least $24,500.00.[5] Defense counsel argues that as a matter of law the vehicle was worthless because it was abandoned under Maryland law. The argument is not only illogical, but inconsistent with common experience. Abandoned property can be of considerable value regardless of its age and whether or not it is in operable condition. Associates had a constitutionally protectable interest in the Freightliner. *Cf. Price v. City of Junction, Texas,* 711 F.2d 582, 589 (5th Cir.1983) ("whether a junk car has little or great value, it is constitutionally protected property").

■ The *Propert* court went on to consider the next question, *i.e.* what process is due, and came to the quite expectable conclusion that the Due Process Clause requires, at a

---

**5.** Defense counsel's experts concede this is the appraisal value of the vehicle; indeed defense counsel successfully argued that a $25,000 bond should be set before the vehicle was replevied.

minimum, "that the government provide notice and some kind of hearing before final deprivation of a property interest," (*Propert,* 948 F.2d at 1331) (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)). The court cited cases from a great number of jurisdictions in support of the proposition that "every court which has considered the issue has held that the owners of towed vehicles— whether illegally parked, abandoned, or junked—are entitled, at minimum, to post-deprivation notice and a hearing." *Id.* at 1332–33. *See also DeFranks v. Mayor and City Council of Ocean City,* 777 F.2d 185 (4th Cir.1985) (suggesting that a pre-towing hearing is unnecessary so long as there is provision for a prompt post-towing hearing).[6]

Interestingly, Defendant does not appear to dispute that a post-seizure hearing is required, but argues instead that Associates' claims "are moot because in this case Associates obtained actual notice of the transfer of its vehicle and brought the case before this Court as is its right and the right of any other property owner." Defendant makes this argument despite the fact that it has gone so far as to register itself as the title owner of the vehicle and has thus transformed the proceeding into one in which the Court is asked to set the transaction aside. Matsuki misapprehends what due process is about. It is not "due process" to have the right to bring a suit to challenge a deprivation of rights that has already taken place. The key concept is that notice and opportunity to be heard must be given "before" the deprivation. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). If this were not so, in some other case the seized vehicle could easily be dismantled and destroyed before an interested party could get to court. No retroactive relief would be available in such circumstances.

Moreover, it is by no means certain that the appropriate decisionmaker in this instance is a court. *See Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). As the Supreme Court noted in *Memphis Light, Gas and Water Div. v. Craft,* 436 U.S. 1, 21, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978):

> An action in equity to halt an improper [deprivation], because it is less likely to be pursued and less likely to be effective, even if pursued, will not provide the same assurance of accurate decisionmaking as would an adequate administrative procedure.

The U.S. Court of Appeals in *Propert* observed that the District of Columbia government, prior to determining that a car was junk, could have sent a certified letter to the owner's home address, as reflected in the jurisdiction's license and registration records. *Propert,* 948 F.2d at 1334, n. 6. *See also* Maryland Transportation Article, § 25–204 (Notice by police to last known registered owner and secured parties) and § 25–205 (Same—Notice by Publication). The Court takes no position as to what sort of notice and hearing might meet constitutional requirements insofar as this particular subsection of Maryland's Abandoned Vehicle Statute is concerned. For now, it suffices to conclude that the provision is unconstitutional.

## IV

It remains to discuss the consequences of the Court's declaration that § 25–210(b) is unconstitutional. This needs little discussion.

█ Defendant concedes that, upon a declaration of unconstitutionality, it would have to deliver the vehicle to Associates forthwith. It has, of course, already done so by virtue of

---

**6.** Although Defendant does not press the point, it is appropriate to note that under the Maryland statute there is sufficient participation by the State to constitute state action and implicate due process. The statute not only authorizes the seizure of eligible vehicles, but validates the transfer of ownership of the vehicle to the seizing party. *See Lugar v. (Edmondson) Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (state officials' joint participation with private party in effecting prejudgment attachment of property implicates due process). *See also Huemmer,* 474 F.Supp. at 711 ("[Ocean] City must be deemed to have been a participant in the towing process because, through its ordinance, it authorized ... an impounding ordinance failing to comply with those due process standards ordinarily required when personal property is to be confiscated.").

the Court's order of replevin. But, as Associates points out, it also becomes appropriate for the Court to declare that any documents upon which Matsuki claims or asserts any property interest in the vehicle should be null and void and of no legal effect and that Matsuki must surrender any such documents that were issued to it in connection with the vehicle. The entry of judgment in favor of Associates on all of the remaining Counts (Counts II through IV) is also in order as is the release of Associates from the corporate surety bond it posted and an award of costs.

■ Despite Associates' argument that it should recover as damages the attorneys fees that it has incurred in these proceedings, in replevin and detinue actions, as in civil actions in general, attorney's fees are not recoverable in the absence of contract or statute. *See Koch v. Mack Int'l Motor Truck Corp.*, 201 Md. 562, 95 A.2d 105 (1953); *and see generally* 66 Am.Jur.2d, Replevin, § 115; Annotation, "Recovery of Attorney's Fees as Damages by Successful Litigant in Replevin or Detinue Action," 60 A.L.R.2d 945 (1958). Associates pleads no incidental damages covered by either the action of replevin or of detinue.[7] Accordingly, Associates' request for attorneys fees will be denied. The Court will enter a Final Order consistent with these conclusions.

---

**7.** Damages in a replevin action may include compensation for loss of use of the property as well as actual injury to the property. *General Motors Acceptance Corp. v. Petrillo*, 253 Md. 669, 253 A.2d 736 (1969). To the extent punitive damages are allowable in replevin actions, *see Hiser v. Webster*, 139 Md. 236, 114 A. 897 (1921), the Court finds as a matter of law that they are not recoverable in the present case by reason of Matsuki's honest, 139 Md. 236, 114 A. 897 (1921), the Court finds as a matter of law that they are not recoverable in the present case by reason of Matsuki's honest, if mistaken, assertion of a supposed right. *General Motors Acceptance Corp., supra.* The Court expresses no opinion as to any cause of action that Wood might have against Matsuki for its seizure of the vehicle.