[No. 30711.   Department One.   December 2, 1948.]

G. C. HOFF, *Respondent,* v. ROY LESTER *et al., Appellants.*[1]

[1] Reported in 200 P. (2d) 515.

*W. E. Southard* and *H. Earl Davis,* for appellants.

*Allen Spratlin* and *Edward T. Engst,* for respondent.

HILL, J.—G. C. Hoff owned a well drilling machine and equipment which had been moved in October of 1942 onto

a farm owned by Mr. and Mrs. Roy Lester. The well drilling machine and equipment will hereafter be referred to as equipment. On July 1, 1943, the Lesters refused to permit Hoff to remove his equipment from their place, and on July 7th he commenced an action in replevin and to recover damages for its unlawful detention. He did not put up a bond, as he was entitled to do under Rem. Rev. Stat., § 709 [P.P.C. § 92-9], and the equipment remained on the Lester farm during the period from the commencement of the action until the case had been tried, and until a judgment was entered on March 13, 1945.

The trial court found that the property was unlawfully detained by the Lesters, but restricted damages to the period between July 1, 1943, and July 7, 1943. On an appeal from the judgment, we held (*Hoff v. Lester,* 25 Wn. (2d) 86, 168 P. (2d) 409) that the trial court erred in restricting the damages to the date of the commencement of the action, and the cause was remanded

". . . with directions to proceed to determine the amount of damages which should be awarded to appellant [Hoff], on account of his having been deprived of the use of the drill between the dates of the commencement of the action and the entry of judgment. Either party may introduce further evidence bearing upon this question, and the trial court may, when the case is closed, enter supplemental findings of fact and conclusions of law upon this phase of the litigation and enter an amended judgment in accordance therewith."

After a pretrial conference, the case was again tried, this time on the narrow issue of damages for detention during the period from July 7, 1943, to March 13, 1945. At the conclusion of respondent's case, appellants challenged its sufficiency to support a verdict and, in the alternative, moved for a directed verdict; and when the trial court refused to sustain their challenge to the sufficiency of the evidence or grant their motion, they stood on that challenge and declined to introduce any evidence. The jury brought in a verdict for respondent in the sum of two thousand fifty dollars. The trial court, instead of entering a judgment

on the verdict, did as specifically directed by the opinion in *Hoff v. Lester, supra,* and made "supplemental findings of fact and conclusions of law upon this phase of the litigation" and entered "an amended judgment in accordance therewith" in the sum of two thousand fifty dollars.

The essential finding was that the reasonable use value of the equipment between the date of the commencement of the action and the date of the original judgment was the sum of two thousand fifty dollars and "That the defendants [appellants here] did not introduce any evidence which showed that the plaintiff [respondent] could or should have mitigated his damages." From the entry of the amended judgment based on that finding, this appeal is taken.

At the outset, five issues presented to us can be quickly disposed of:

■ (1) Respondent moves to strike the statement of facts because it did not include all of the material facts, matters, and proceedings in the earlier phase of the trial, but only those subsequent to the filing of the remittitur on the earlier appeal. This motion is without merit. It is undisputed that the statement of facts contains all the facts, matters, and proceedings subsequent to the filing of the remittitur and everything which was before the trial court and the jury on the issues on which they were called to make a determination.

■ (2) Errors assigned with reference to the giving of four instructions and the failure to give a requested instruction will not be considered because the instructions and requested instruction are not set out in appellants' brief, as required by Rule of Supreme Court 16(5), 18 Wn. (2d) 18-a.

■ (3) We agree with appellants' contention that they were entitled to show that they requested the respondent to remove his equipment in December, 1943. The trial court at first indicated that it would not permit such testimony, but later the barriers were let down. The trial court called attention to the allegation in appellants' answer whereby

they alleged that respondent could have removed his equipment without hindrance on their part, and then said:

"I am satisfied that from the language of the higher court that *it was felt by that court that at the first trial the consideration of mitigation of damages, or the ability of the plaintiff* [respondent] *to remove his equipment during that period was not even gone into or considered.*

"So, in view of that, I am going to permit any testimony that this defendant [appellant] wishes to put in on the theory of mitigation of the damages for the purpose of making any *showing that the plaintiff was in a position, or was able to recover this property other than by bond.*" (Italics ours.)

Since appellants chose to put in no evidence and ignored this invitation of the trial court to proceed with their proof on the issue in question, they cannot now claim error based on the court's earlier statement that such testimony would not be permitted.

(4) Appellants also assign as error the refusal to grant their motion for a directed verdict on the ground that there was no denial of the allegation in their amended answer

". . . that there has been no time since the said well drill has been on the premises of the defendants [appellants] that he [respondent] could not have moved it off without any hindrance on the part of the defendants, either by force or threats, or intimidation, or any threats to institute legal proceedings."

This averment tendered no new issue. It was only an argumentative denial of the allegations of the complaint that the equipment had been and was being wrongfully withheld from the respondent by the appellants, and no denial was necessary. *Dueber v. Wolfe,* 47 Wash. 634, 92 Pac. 455; *Ryan v. Lambert,* 49 Wash. 649, 96 Pac. 232.

In any event, the case having been tried once, appealed to the supreme court, and a pretrial conference having been held to determine the issues on which the case would again be heard, all without appellants having made any reference to the failure to deny this allegation, they cannot, on any such technicality, urge that the trial court

erred in failing to direct a verdict in their favor. The failure to deny was waived by want of timely objection. *Allen v. Schultz,* 107 Wash. 393, 181 Pac. 916, 6 A. L. R. 676.

■ (5) Appellants contend that, although it had been found at the earlier trial that the market value of the equipment was forty-five hundred dollars, they were entitled to show what it had cost. The trial court properly held that the cost was immaterial, because the market value had already been determined. No bar was interposed to prevent appellants from showing the age, kind, and condition of the equipment, in short, anything that would affect its capability for the work in which it was engaged and, consequently, its rental value. The market value was material because, as pointed out in *Hoff v. Lester, supra,* and in *Johnston v. Karjala,* 172 Wash. 122, 19 P. (2d) 948, 90 A. L. R. 967, quoted therein, the award of damages in such cases must bear some reasonable relation to the value of the property.

We come now to the difficult issue presented on this appeal, *i.e.*: Is there sufficient evidence to sustain the verdict and the finding that respondent was damaged in the sum of two thousand fifty dollars? It must be conceded that the evidence is, to use the very descriptive expression of the trial court, "skimpy." All the testimony bearing on the question of damages introduced prior to the time the respondent rested for the first time can be outlined as follows:

For drilling wells, respondent received $3.50 a foot up to two hundred feet, with an increase of fifty cents a foot for each additional fifty feet in depth. He dug three wells in 1941, which were 150, 350, and 400 feet in depth. He received five or six hundred dollars for the 150-foot well, but did not know how much he received for the other two. He could always average more than a foot an hour, even in very hard rock, and never made less than a foot an hour in all kinds of formations. In May of 1942, he suffered a heart attack while working on what was referred to as the Preston and Malone well and was thereafter unable to operate his equipment; consequently, he leased it to one Osborne,

receiving forty per cent of the income for its use, and the lessee furnished the gasoline, oil, coal, and labor. Under this arrangement, Osborne finished the Preston and Malone well, drilled a well at Moses Lake, and then, in October, moved onto appellants' property. There was a change of lessees while appellants' well was being drilled, but the terms remained the same.

Respondent expressed some dissatisfaction with both of the men who leased his equipment. With reference to the first lessee, he testified as follows:

"Q. How long did he work on the Lester property with the drill? A. Well, he was there, oh, I suppose, four or five months; but I didn't say that he worked";
and with reference to the second lessee, he testified:

"Q. Well, hadn't you done any drilling prior to July 7th? A. Well, the driller I had was supposed to drill, but if it was a little frosty in the morning it would be too tough for him to get out to work, and it stood there approximately all winter. Q. He didn't go out to work when it was a little frosty; isn't that about the size of it? A. Yes."

He also testified that there had been no drilling done on the Lester place for two months prior to July 7, 1943. He kept no books or records, even for income tax purposes, and no attempt was made to estimate the amount of his profits while he was operating the equipment, and there likewise was no testimony as to what his receipts were under the leasing agreement. He did testify as to three specific well drilling jobs he could have had if he had had possession of his equipment, and that during the period from July 7, 1943, to March 13, 1945, ". . . they were after me from all over the county." He also testified that he drilled no wells after he recovered possession of his equipment, and sold it within a few months thereafter.

When respondent rested, with the testimony as we have summarized it, it could be assumed that there would have been work continuously available to him between July 7, 1943, and March 13, 1945, and that he would have received forty per cent of the amount received by the lessees of his equipment, or forty per cent of $3.50 or more a foot, depend-

ing upon the depth at which the well drilling operations were conducted. Add to that the other factor, that the lessees would have averaged more than a foot an hour, and it might be concluded that, if they had drilled eight hours a day, the minimum income would have been twenty-eight dollars a day, forty per cent of which would be $11.20. This does not take into consideration inevitable time loss due to weather conditions, breakdowns, moving from job to job, and other causes. The testimony did show considerable periods when the equipment had been idle prior to July 7, 1943.

■ Anything other than nominal damages based upon the evidence then in the record must necessarily have been the result of speculation and conjecture, and the trial court permitted the respondent to reopen his case for further evidence. This the appellants urge was error, but it seems to us a matter peculiarly within the discretion of the trial court. *Turpen v. Johnson,* 26 Wn. (2d) 716, 175 P. (2d) 495; *Beadle v. Barta,* 13 Wn. (2d) 67, 123 P. (2d) 761; *Niemeier v. Rosenbaum,* 189 Wash. 1, 63 P. (2d) 424.

After his case was reopened, the respondent testified that he had had offers to drill wells from ". . . eight, ten, or a dozen different parties" within a year after July 7, 1943, but he did not recall the names of any except the three concerning whom he had previously testified; that fifteen dollars a day was a reasonable rental in July, 1943, for equipment such as he had, the person renting the equipment to furnish the labor, gasoline, oil, and coal; that there was a lot of demand for the rental of such equipment; that six dollars an hour would have been a reasonable rental for equipment such as he had if the owner furnished the labor, gasoline, oil, coal, and kept up the equipment; that drillers sometimes worked ten hours a day, and "nobody works less than eight hours"; and that labor would have cost $1.25 an hour, and gasoline, oil, and coal about fifty cents an hour. With this evidence in the record, the respondent again rested, and the appellants, after challenging the sufficiency of the evidence to establish any damages, elected to introduce no evidence.

■ The applicable rules relative to damages in replevin actions are quickly stated: When the wrongful detention of equipment such as respondent's is established,

". . . the damages for detention include the depreciation in the value of the property and the value of the use of the property to the owner. . . . Evidence of rental value may be competent as evidence of the usable value of the property, but damages are not recoverable by way of rent as such by reason of the use of the property by the wrongdoer." *Meyers v. Walker,* 173 Wash. 592, 596, 24 P. (2d) 97.

As is pointed out in *Meyers v. Walker, supra,* the theory is not that rent is being paid for the property detained, but rather that

". . . the law will' presume that the wrongful taker has used the property to his own benefit and can pay the value of such use out of his gains and not out of his pocket." *MacKenzie v. Steeves,* 98 Wash. 17, 167 Pac. 50.

■ While testimony as to rental value is competent evidence of the value of the use of the property to the owner, it must bear some reasonable relation to the value of the property. *Hoff v. Lester, supra,* and cases there cited, to which may be added *Brookmole v. Kinchen,* 253 S. W. (Tex. Civ. App.) 953.

It is apparent that, after his case was reopened for further testimony, the respondent changed his theory of damages from what he would have received if the equipment had been operated under his forty per cent leasing arrangement, with all its uncertainties and contingencies, to the rental value theory of damages, which we have heretofore approved.

■ It is difficult to reconcile respondent's testimony that he was paid for the use of his well drilling equipment on the basis of a rate of $3.50 a foot or more (depending upon depth of drilling operation) with his testimony that the equipment had a bare rental value of fifteen dollars a day and a rental value of forty-eight to sixty dollars a day based on his six dollar an hour figure, especially unless the daily rental was limited to the time of actual drilling oper-

ations. However, these figures were not so limited, and it stands undisputed that there was a substantial demand for the rental of such equipment at the rate of fifteen dollars a day, and appellants permitted the matter to go to the jury without any evidence to show that such rate would be limited to days of actual use, or that it was in any degree excessive. As there were more than five hundred working days in the twenty months and six days between July 7, 1943, and March 13, 1945, the verdict and finding of two thousand fifty dollars were well within the evidence and consistent with our holdings that damages in such cases must bear a reasonable relationship to the value of the property. The judgment is reluctantly affirmed.

MALLERY, C. J., BEALS, STEINERT, and JEFFERS, JJ., concur.