507 P.2d 668

**BATES & SPRINGER OF ARIZONA, INC.,**
an Arizona corporation, Appellant,

v.

Darien Z. FRIERMOOD and Austin W.
Kaercher, Appellees.

No. 10812–PR.

Supreme Court of Arizona,
In Banc.

March 14, 1973.

**204**

Hughes, Hughes & Conlan by Coit I. Hughes, Phoenix, for appellant.

Spaid, Fish, Briney & Duffield by Richard Duffield, Tucson, for appellees.

LOCKWOOD, Justice:

Appellees Friermood and Kaercher, the plaintiffs in the trial court, filed a replevin action alleging that they were the owners of certain television sets which were unlawfully seized by the defendant. They asked for the return of the sets as well as for damages for the loss of the use of the sets.

In its answer, the defendant Bates & Springer, admitted that it had possession of certain television sets found in the possession of Lester B. Holmes. Holmes owed the sum of $948.73 for rent and the sets were held pursuant to a landlord's lien, A.R.S. § 33–361 et seq. (1956).

Appellant filed a motion for new trial and upon the denial of said motion filed an appeal with the Court of Appeals. The Court of Appeals held that the trial court had jurisdiction to decide this case and stated that the television sets belonging to Friermood and Kaercher were exempt

from the landlord's lien. As a result, the Court of Appeals affirmed the judgment of the trial court except on the issue of damages, on which it remanded the case to the trial court for the purpose of assessing the damages at $1,850 for Friermood and $740 for Kaercher.

The issues presented to this Court are:

(1) Since the landlord was the Federal Housing Authority, did the State have jurisdiction over the case?

(2) Is personal property of third persons [Friermood and Kaercher] left with a tenant [Holmes] for business purposes subject to a landlord's lien?

(3) Did the trial court err in its calculation of damages?

## JURISDICTION

Bates and Springer contend that as agents of the Federal Housing Authority there was exclusive federal jurisdiction. They also assert that the lack of jurisdiction of the state court may be raised on appeal even though not raised in the trial court.

Appellants are correct when they state that an appellate court will consider jurisdictional questions either *sua sponte* or where raised for the first time on appeal. Ronan v. First Nat. Bank of Arizona, 90 Ariz. 341, 367 P.2d 950 (1962).

Nevertheless, we are unable to find a jurisdictional defect. The United States government (via the Federal Housing Authority) was not a party to the action and even if it had been, Bates & Springer, being an Arizona corporation, defeat concurrent diversity jurisdiction. See Williams v. United States, 405 F.2d 951 (9th Cir. 1969); United States v. Dooley, 231 F.2d 423 (9th Cir. 1955).

The appellants also maintain that there was a federal question raised which confers upon the federal court exclusive jurisdiction. However, in this respect they

only cite 28 U.S.C. § 1346(b) [1] of the Federal Tort Claims Act. The Federal Tort Claims Act does not confer federal jurisdiction but provides a vehicle allowing the United States to be sued. See United States v. Dooley, *supra*.

As a result, we hold that the trial court had jurisdiction over this matter.

## LANDLORD'S LIEN

The center of this controversy revolves around who owned the television sets in question and whether they could be attached.

The statute granting a landlord's lien, A.R.S. § 33–362 (1956) provides:

"A. The landlord shall have a lien on all property of his tenant not exempt by law, placed upon or used on the leased premises, until the rent is paid * * *.

"B. The landlord may seize for rent any personal property of his tenant found on the premises, *but the property of any other person, although found on the premises, shall not be liable therefor * * *.*" (Emphasis added.)

Although A.R.S. § 33–362 on its face exempts the property of a third person this statute and its predecessors have been interpreted by several cases.

■ It is well established in Arizona that the landlord's lien attaches at the commencement of the tenancy. Dewar v. Hagans, 61 Ariz. 201, 205, 146 P.2d 208, 209 (1944); Murphey v. Brown, 12 Ariz. 268, 274, 100 P. 801, 803 (1909).

■ Furthermore, the lien attaches to all merchandise on the leased premises except when such merchandise is sold in the usual course of business and removed therefrom. Western States Securities Co. v. Mosher, 28 Ariz. 420, 425, 237 P. 192, 193–194 (1925).

The agreement between Holmes and Kaercher appears to be a leaseback arrangement where Holmes, the original owner of the sets, sold them to Kaercher who in turn rented them back to Holmes to use in his usual course of business. It is not disputed that Kaercher was in fact the owner of some of the sets and had not removed them from the leased premises. Nevertheless, there is a dispute in the testimony regarding when the lease between Holmes and Bates & Springer commenced in relation to when Kaercher bought the sets.

"Q. How long were you in the business?

"A. At Green Valley, four years, and in Tucson, seven, seven.

\* \* \* \* \* \*

"Q. Actually, Mr. Homes [Holmes], over a period of time you have been delinquent in your rents at a number of times, haven't you?

"A. Yes, sir.

"Q. In fact, you were in 1967 when you renegotiated the contract, when the contract was renegotiated with you, correct?

"MR. DUFFIELD: I object. I don't see the materiality of it.

"A. [By the witness] You mean the time F.H.A. made a lease with me, is that what you mean?

"MR. HUGHES: Yes.

\* \* \* \* \* \*

"Q. In fact, Mr. Holmes, as early as 1966 you had a deal with Mr. Kertchner [Kaercher] that you were going to pay him a percentage of your business isn't that right?

"A. There was a contract drawn up in the office of Royal and Carlson, but it was never put in effect. We discarded it and did not use it.

---

1. "(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945 * * *."

\* \* \* \* \* \*

"Q. And you sold them [television sets to Mr. Kaercher] in—when?

"A. I don't remember.

"Q. 1966?

"A. It could have been, I don't remember how long back he bought those sets. It goes back a couple or three years."

Regarding Friermood, he purchased the trust receipt from Motorola and B. &. W. Acceptance Corporation on October 31, 1968. This trust receipt had originally been made between Holmes, Motorola, and B. &. W. on some television sets, in March 1968. There is, nevertheless, a conflict in the testimony on the issue of whether in October 1968 Friermood had knowledge that Holmes was delinquent in his rent.

"Q. Were you aware Mr. Holmes fell behind in his rent?

"A. No, that was not my business. I did not—

\* \* \* \* \* \*

"Q. Did you know he was in arears in his rent?

"A. Well, if I did, I don't know how much."

It must also be noted that Holmes never owned the sets on which Friermood held the trust receipt. Furthermore, Holmes had only agreed to sell or rent the television sets and remit certain sums to Friermood. As the testimony indicates, the television sets owned by Friermood never left the premises.

■ From the foregoing, the sets belonging to Kaercher could have been subject to the landlord's lien if the sale of the sets had occurred after Holmes leased and moved his business into the premises in question. However, the record is not clear on this point and it is well settled that where the trial court was not requested to and did not make findings of fact or conclusions of law, the Supreme Court will view the evidence and reasonable inferences therefrom in the light most favorable to the party in whose favor the judgment

was rendered and if there is any evidence to support the judgment it will be affirmed. Jerger v. Rubin, 106 Ariz. 114, 116, 471 P.2d 726, 728 (1970).

■ In the instant case, there were no findings of fact or conclusions of law. Looking at the evidence in the light most favorable to Kaercher, there is evidence to indicate that Kaercher purchased the sets before Holmes even entered the premises and so we will not disturb the trial court's judgment in this respect. We therefore hold that Bates & Springer could not properly attach the television sets owned by Kaercher, although they were on the premises at the time of the delinquency in rent.

■ Furthermore, Bates & Springer could not attach the sets belonging to Friermood. It should be noted that Friermood did not buy the sets from Holmes but rather had purchased a trust receipt on some sets and allowed Holmes to rent those sets to customers. Therefore the question arises whether the landlord lien takes priority over the trust receipt. The Uniform Commercial Code does deal with the priority of security interests. A.R.S. § 44–3131 (1967). However, landlord's liens are specifically excluded from the Code. See A.R.S. §§ 44–3102, subsec. b and 44–3104, subsec. 2. As a result, we are free to follow the rule set forth in Schatt-Ajax Industries v. Churchill, 3 Ariz.App. 34, 37, 411 P.2d 457, 460 (1966) which provides that a landlord's lien is not superior to a conditional sales contract. We therefore hold that since a landlord's lien is also not superior to the debt incurred under a trust receipt, Bates & Springer could not attach property which was subject to Friermood's trust receipt.

The judgment of the trial court is upheld regarding both Kaercher and Friermood. Nevertheless, the issue of damages must still be considered.

## DAMAGES

The trial court assessed damages at $2,240 for Friermood and $880 for Kaerch-

er. The Court of Appeals, based on the fact that Holmes had signed a note and mortgage with Bates & Springer for the delinquent rent prior to the time of trial, reduced the damages assessed against Bates & Springer. The formula employed by the Court of Appeals was based on the trial court's determination of $5.00 per month on each set. The period of time covered by the trial court's formula was sixteen months, from July 29, 1969, the date the sets were seized, to November 13, 1970, the date of trial. The Court of Appeals essentially used the same formula as the trial court except that it determined the period of damages to be from July 29, 1969 to September 8, 1970, the date the suit between Holmes and Bates & Springer was settled and the case dismissed which thereby caused the release of the landlord's lien on all of the television sets.

Again there is conflicting evidence regarding whether Friermood and Kaercher knew that the sets had been released in September 1970 and could therefore have mitigated their damages by obtaining the sets.

It has been held that "the trier of facts should consider the particular circumstances of the case and, upon the facts, determine whether or not, at any stage of the proceedings, the plaintiff should have mitigated his damages by availing himself of his statutory right to procure immediate possession of the property." Hoff v. Lester, 25 Wash.2d 86, 95, 168 P.2d 409, 414–415 (1946). Furthermore, the court in *Hoff* stated:

"It would seem that the burden of proof should properly rest upon the defendant in the action to make a *prima facie* showing of facts which would justify a ruling that some duty rested upon the plaintiff to seek immediate delivery of the property in suit by filing a bond. The plaintiff, of course, would have the right to introduce evidence tending to relieve him of this burden." 25 Wash.2d at 96, 168 P.2d at 415.

Although the *Hoff* case deals specifically with the time between commencement of the suit and entry of judgment, it still applies to the instant case.

We feel that the trial court had sufficient evidence before it to find that Kaercher and Friermood should have removed their property on September 8, 1970 or shortly thereafter, with or without filing a bond under the statute.

Included in what the defendant could show is that it requested the plaintiffs to remove their property. Hoff v. Lester, 31 Wash.2d 937, 940, 200 P.2d 515, 517 (1948). In the instant case, there was such a showing as evidenced by exhibit A, the September 8, 1970 letter from Hughes to Duffield. Hughes represents Bates & Springer whereas Duffield is the attorney for Holmes, Friermood and Kaercher. The letter sent to Duffield was concerned with a written settlement between the parties and said in part:

"Dear Mr. Duffield:

    *      *      *      *      *      *

"In order to expedite this matter I am enclosing Original and one copy of Stipulation and Order of Dismissal in the matter of Bates & Springer v. Holmes, and I am enclosing Original and one copy of Stipulation and Order of Dismissal in the matter of Friermood et al vs. Bates & Springer. Would you please sign both Stipulations and forward to the proper courts for signature on the Orders. I understand that Mr. Holmes has secured some of the property from Mr. Austin and that he made a payment of $25.00 which was due September 1, 1970. Would you please instruct him that until further notification he is to make the subsequent payments through this office. Please have the respective orders signed and return a conformed copy of each to me together with the initialed realty mortgage and note. As soon as these matters are completed, please have Mr. Holmes pick up the balance of the property."

The foregoing letter was written to Duffield in the scope of his authority as attorney for Friermood and Kaercher as well as Holmes. The letter also specifically notifies Duffield that "the balance of the property" could be picked up. Although Friermood testified that he was not told directly that the property was released, the law imputes such knowledge to him. It is well settled that:

> "*A notification by* or to *a third person to* or by *an agent is not prevented from being notice to* or by *the principal because of the fact that the agent, when receiving* or giving *the notification, is acting adversely to the principal,* unless the third person has notice of the agent's adverse purposes." Restatement of Agency (Second) § 271 (1958). (Emphasis added.)

See also In re Estate of Milliman, 101 Ariz. 54, 415 P.2d 877 (1966).

Duffield, as the agent, was notified by the September 8 letter which is imputed to his principals Friermood and Kaercher, whether or not they had any actual knowledge. We therefore conclude that the plaintiffs Friermood and Kaercher had a duty to mitigate their damages by September 8 and did not do so. As a result, we hold that Friermood is entitled to the sum of $1,850 and that Kaercher is entitled to the sum of $740.

The Court of Appeals' opinion, 16 Ariz. App. 309, 492 P.2d 1247 (1972) is vacated. The judgment of the trial court is affirmed as modified and the case is remanded to the trial court which is instructed to enter a judgment consistent with this opinion.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and HOLOHAN, JJ., concur.