943 P.2d 847 (1997)
189 Ariz. 487
In the Matter of the ESTATE OF P.K.L., a Protected Person-Appellee,
v.
J.K.S., Guardian, Conservator-Appellant.
No. 1 CA-CV 94-0108.
Court of Appeals of Arizona, Division 1, Department E.
April 17, 1997.
Reconsideration Denied August 27, 1997.
Review Denied September 16, 1997.
*848 Bernstein & Appel by Marlene Appel, Phoenix, and Ulrich, Kessler, & Anger, P.C. by Paul G. Ulrich, William H. Anger, Phoenix, for Appellee.
William F. Behrens, Phoenix, for Appellant.

OPINION
GRANT, Judge.
This is an appeal by the conservator ("J.K.S.") of the estate of an adult incapacitated *849 person ("P.K.L.")[1] challenging the probate court's jurisdiction to enter rulings it made in conjunction with its review of the third annual account filed for the conservatorship by J.K.S., the conservator.

FACTS AND PROCEDURAL HISTORY
P.K.L. was born in 1938. In 1967, he was declared to be mentally incompetent. He is diagnosed as schizophrenic. P.K.L.'s father served originally as the guardian/conservator, but he resigned in 1970 in favor of the Arizona Veterans' Service Commission ("V.S.C.") which served in that capacity until J.K.S. was appointed in December 1989.
Because P.K.L.'s disability was found to be related to military service, he has received both monthly disability benefits from the Veterans' Administration and Social Security benefits. He also is one of the beneficiaries of a sizable trust (the "family trust") that was established by his father, who is deceased.
In approximately 1983, P.K.L. began living with his sister, J.K.S., her husband and three children, in a house owned by a corporation which is owned by the heirs of the parties' father's estate. Eventually, a conflict arose between V.S.C. and J.K.S. when V.S.C. began questioning monies J.K.S. was spending and denied certain monetary requests she made. As a result, in February 1989, J.K.S. petitioned to remove V.S.C. and have herself appointed as guardian/conservator.
Initially, J.K.S.'s petition was contested by V.S.C. and an attorney was appointed to represent P.K.L. An investigator was appointed pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 14-5308 to provide advice to the court. The investigator reported her concerns that P.K.L. was paying a disproportionate amount of the household expenses for J.K.S.'s family. The investigator recommended that J.K.S. not be appointed as conservator because of her heavy dependence upon P.K.L.'s income which the investigator felt might present a conflict of interest.
Nevertheless, all parties through their counsel stipulated that V.S.C. be removed and that J.K.S. be substituted as the guardian/conservator. The court accepted the stipulation and appointed J.K.S. as conservator. The stipulation and order directed J.K.S. to open an interest-bearing restricted account into which she was to deposit all liquid assets she received on P.K.L.'s behalf. The stipulation and order also provided for J.K.S. to monthly withdraw funds from P.K.L.'s estate to give P.K.L. a weekly allowance of $250 and to pay J.K.S. the amount of $2,000 per month as "room and board for and the reasonable care of P.K.L." Finally, pursuant to the stipulation and order, J.K.S. was required to account to the court as conservator on an annual basis. The order, entered on December 18, 1989, and amended on January 3, 1990, was signed both times by Judge Morris Rozar.
When J.K.S. filed her first annual accounting for the conservatorship for the 1990 calendar year, the court's accountant found a number of irregularities in the accounting. After a series of attempts by J.K.S. and her counsel to correct these accounting irregularities, Probate Judge pro tempore Kenneth W. Reeves, III,[2] who had the duty of reviewing the accounting, gave his approval.
In reviewing J.K.S.'s account filed for 1991, the court's accountant found more irregularities in the figures. The figures were again corrected. Meanwhile, another investigator had been appointed and reported to the court her conclusion that P.K.L. was not getting much in the way of "room and board" for the $2,000 per month being paid to J.K.S. The court's accountant then filed a second report, questioning the reasonableness of the "room and board" charge of $2,000 per month, recommending appointment of counsel for P.K.L., and advising the court to be aware that J.K.S. had made a statement in a response to his last report that during the next year, she was not going to report monies P.K.L. received from the family trust in his conservatorship estate, but instead would *850 be placing these funds in a special account. The probate court appointed counsel for P.K.L. After appointed counsel reported her concurrence in the 1991 account, the probate court approved it.
On January 22, 1993, when J.K.S. filed the 1992 accounting, the probate court intensified its scrutiny of the accounting. After a hearing to consider approval of the annual account, Judge Reeves made the following minute entry ruling:
Counsel is directed to provide the Court with a more detailed explanation of what the conservator does in exchange for $2,000.00 per month and to provide the Court with a copy of the conservator's most recent income tax return showing that the conservator has been reporting this compensation as income within two weeks of today's date.
J.K.S. objected to producing her tax returns, but did not deny that she did not report any of the money she received from P.K.L.'s estate as income on her tax returns. She argued that these funds were not income to her, but were for P.K.L.'s living expenses.
Not being satisfied with this response, on March 9, 1993, the probate court ordered J.K.S. to file a detailed household budget from which it could determine an appropriate contribution from P.K.L. Reiterating its order that she produce her income tax returns, the court stated:
Counsel is advised that the conservator is still subject to an order to submit her income tax return. The return may be submitted under seal, but will be required to provide the Court with sufficient information from which to determine whether the protected person is contributing more than a reasonable share of household expenses. This requirement is routinely imposed upon fiduciaries who seek approval of this Court for periodic block contributions to household expenses. Failure to comply may subject the conservator to sanctions.
While some amounts paid to the conservator may be reimbursement for food and other necessaries, significant amounts are obviously in the nature of rent and compensation. The Court understands that whether it has a duty to bring this matter to the attention of the Internal Revenue Service lies within its discretion, but counsel should be prepared to address that question at the continued hearing.
Although continuing to object, J.K.S. produced her 1991 federal income tax return and additional information showing household expenses. From these sources, the probate court tentatively found that P.K.L.'s monthly share of the household expenses would be less than $700 per month, far below the monthly amount J.K.S. was receiving. Because J.K.S. was not claiming any of the amount as income for services rendered, the court set the matter for further hearing to allow J.K.S. to present evidence to show why the court should not approve the 1992 account, but enter an order reducing P.K.L.'s room and board thereafter from $2,000 to $750 per month. The court recognized that J.K.S. probably was providing services which entitled her to compensation. Therefore, the court clarified that an order reducing the payment to $750 "would not preclude the conservator from seeking approval of compensation from the estate on an annual basis to the extent the compensation requested was reasonable and after compliance with Maricopa County Local Rule ("M.C.L.R.") 5.7...." The probate court also indicated that it would like some information about the family trust under which P.K.L. was a supposed beneficiary. It advised that if the court was correct in believing that J.K.S.'s counsel is the trustee of that trust, "he should be prepared to answer questions with respect to that trust as it relates to the conservatorship in addition to the issues mentioned above."
Further proceedings in the probate court were delayed while counsel for J.K.S. filed two special actions in this court seeking relief from the denial of motions she had filed to remove Judge pro tempore Reeves from the proceedings. After J.K.S. failed to receive the relief she sought in the special actions, the matter proceeded to the final evidentiary hearing on the accounting on January 4, 1994.
*851 In the meantime, J.K.S. had retained new counsel. Her new counsel appeared at the hearing but presented no further evidence for the probate court to consider. The court, therefore, entered an order much like the order it had proposed. The court approved the accounting for the period ending December 31, 1992, but reduced the monthly allowance from $2,000 per month to $750 per month thereafter. The court ruled that J.K.S. could seek compensation in connection with her services when petitioning for approval of her account, but stated that she would need to support her request "with the detailed information required by the Court and M.C.L.R. 5.7 of all individuals seeking compensation as conservators." Finally, with regard to the family trust under which both P.K.L. and J.K.S. are beneficiaries, the court ordered J.K.S. to attach to her account: (1) copies of the trust; (2) the most recent written accounting of the trustee; and (3) a current inventory of the trust's assets.
Shortly before entering this final order, the court stated:
It should be manifestly clear from the Court's prior orders that the conservator may potentially end up with as much money from the estate in monthly allowance and compensation as she has been taking in the past. The difference is that the compensation will be identified as such and its reasonableness will be able to be weighed in the same manner as other conservatorships.
Information regarding the [family trust] is requested because of the protected person's interest in it, the conservator's interest in it, the involvement of former counsel in the administration of the trust, the transactions over the years between the trust and the estate, and the obvious conflicts which exist.
On appeal, J.K.S. challenges Judge pro tempore Reeves's jurisdiction to make some of these rulings. She contends that Reeves was a commissioner without jurisdiction to require the production of documents concerning the trust, and that as a commissioner he acted without jurisdiction in setting aside or changing the order that had been entered by Judge Rozar setting the amount of J.K.S.'s compensation.
We filed our opinion in this matter on February 13, 1996. Following the filing of Motions for Reconsideration by both parties, we withdrew the original opinion. We now issue this substitute opinion which is identical to the first opinion, except that we previously held that J.K.S. did not have to account for her personal services to P.K.L. as guardian, because we construed that guardians were not fiduciaries under the previous M.C.L.R.'s. We granted P.K.L.'s Motion for Reconsideration on the issue of whether guardians are fiduciaries and have a duty to account to the probate court under Rule 5.7 for their services. We subsequently denied J.K.S.'s Motion for Reconsideration. In her Response to P.K.L.'s Motion for Reconsideration, J.K.S. contends that she is not obligated to provide an accounting for personal services to P.K.L. in her capacity as his guardian.

ISSUES
I. Whether Commissioner Reeves had jurisdiction, acting as a judge pro tempore, to order that J.K.S., as conservator, include with her annual account a copy of the trust, as well as copies of the most recent accounting and a current inventory of the trust's assets.
II. Whether Judge pro tempore Reeves had jurisdiction to order the Trustee of the trust established by the father of the conservator and the protected person to appear and answer questions regarding the trust.
III. Whether Commissioner Reeves had jurisdiction to indicate that he would report certain matters regarding J.K.S.'s services as conservator unless she provided documentation to the probate court concerning details regarding the protected person's status in the home of the beneficiaries of his father's trust.
IV. Whether Commissioner Reeves had jurisdiction, as a judge pro tempore, to set aside a previous probate judge's order establishing the amount of the conservator's monthly allowance.

*852 DISCUSSION

I. Jurisdiction of a Judge Pro Tempore

It is unclear from the record to what extent J.K.S. made all of her jurisdictional arguments known in the probate court. We will consider all of these arguments, however, because jurisdictional questions may be raised for the first time on appeal. Bates & Springer of Arizona, Inc. v. Friermood, 109 Ariz. 203, 204, 507 P.2d 668, 669 (1973); Lee v. Lee, 133 Ariz. 118, 121, 649 P.2d 997, 1000 (App.1982).

A. Validity of Probate Court to Question Financial Reports

Before examining the particular questions raised by J.K.S., we first consider whether the probate court may sua sponte question the way financial matters in a conservatorship estate are being handled, rather than waiting for an interested party to bring such matters to the court's attention. The Uniform Probate Code ("UPC"), upon which Arizona's statutes governing decedents' estates, guardianships, protective proceedings and trusts are patterned, contemplates minimal judicial supervision of fiduciaries who have been appointed under its provisions. See Sally Balch Hume, Steps to Enhance Guardianship Monitoring 6-7, ABA (1991). Attesting to this view, for example, Division Two of this court in In Matter of Ray's Estate, 25 Ariz.App. 40, 42, 540 P.2d 771, 773 (1975), observed that, "[t]he intent of the drafters of the probate code was to authorize a conservator once appointed to freely exercise his discretion when acting as conservator." The court held that the situations in which a guardian ad litem is to be appointed in Arizona are extremely limited once the conservator has been appointed.
However, Arizona's version of the protective proceeding statutes has always required that conservators account to the court for administration of the conservatorship estate not less than annually unless expressly relieved of such duty.[3]See A.R.S. § 14-5419(A). For us to conclude that the legislature meant for the probate court to merely rubber-stamp annual accounts would be unreasonable. Obviously, the probate court has a duty to review these accounts for any impropriety or unreasonableness in the manner in which a protected person's property is being handled or accounted for to the court. Subsection (B) of A.R.S. section 14-5419 expressly provides that, "[t]he court may take such action as is appropriate upon filing of annual or other accounts."

B. Validity of Probate Court to Require Production of Financial Documents

J.K.S. does not dispute the foregoing. Nevertheless, she contends that the probate court does not have jurisdiction to require her to produce copies of her father's trust, the written accounting thereof, and the current inventory of the trust's assets. She believes she is shielded from having to comply with this order both because the trust itself is not part of P.K.L.'s estate, and because A.R.S. section 14-7201(B) provides that the administration of a trust is to proceed expeditiously, consistent with the terms of the trust, "free of judicial intervention and without order, approval or other action of any court, subject to the jurisdiction of the court as invoked by interested parties...."
We find J.K.S.'s argument meritless. Even though the trust itself and the trust assets are not part of P.K.L.'s conservatorship estate, the record indicates that P.K.L. is an income beneficiary of the trust. Therefore, any income P.K.L. receives from the trust, is part of his conservatorship estate and should be accounted for by the conservator.
As an income beneficiary, P.K.L. has a right, pursuant to A.R.S. section 14-7303, to have the trustee provide him with the following items of information that the probate court directed J.K.S. to produce: (1) a copy of the trust terms describing or affecting *853 P.K.L.'s interest; (2) relevant information about the trust assets; and (3) the annual statement of the accounts of the trust. A.R.S. section 14-5408 gives the court all the powers over P.K.L.'s estate and affairs which P.K.L. would have if he were not incapacitated. Therefore, the court is also entitled to receive this same information from the trustee. Pursuant to A.R.S. section 14-5426, the court can bestow any powers it is entitled to exercise under A.R.S. section 14-5408 on the conservator, thus giving her the right to request the information. In this case, she already had the right since she, too, is a beneficiary under the trust.
It is also evident that in seeking this information about the trust, the probate court is not attempting to supervise the trust. Instead, the court is ensuring that J.K.S. is fulfilling her fiduciary duty by acting in P.K.L.'s best interests concerning his beneficial interest in the trust. The probate court is fulfilling its role in ensuring that J.K.S. is properly receiving, disbursing and accounting for all monies P.K.L. is entitled to receive from the trust.
Because both J.K.S. and P.K.L. are beneficiaries of their father's trust, J.K.S. has an inherent conflict of interest by serving as P.K.L.'s conservator. J.K.S. admits that she no longer accounts for monies which P.K.L. receives from the trust in the accounts concerning the conservatorship estate where those receipts could be scrutinized by the court. There can be no doubt the court needs this information and is entitled to it.

II. Did the Probate Court have Jurisdiction to Order the Trustee to Appear and Answer Questions Regarding the Trust?
J.K.S. also argues that the probate court had no jurisdiction to tell her then-counsel, who also happened to be the trustee of the trust, to be prepared to answer questions regarding the trust when he appeared at the next hearing in the conservatorship proceedings. We do not address this as a separate issue because J.K.S. has provided no support for this contention, other than the above-mentioned meritless arguments. Additionally, the matter became moot when J.K.S. substituted other counsel in this proceeding.
III. Did the Probate Court have Jurisdiction To Indicate It would Report Certain Matters Regarding J.K.S.'s Services as Conservator Unless She Provided Documentation?
J.K.S. next asks us to find that Judge pro tempore Reeves acted improperly in "threatening" to report her to the Internal Revenue Service, and in saying that he had discretion to do so. We disagree that he was making a "threat." Instead, we find Judge Reeves was trying to reassure J.K.S. that his purpose in requiring the tax returns was not to report her, but to determine what her income was so that he could calculate P.K.L.'s appropriate share of household expenses. Judge Reeves acknowledged that J.K.S. could have some problem in that regard, but we do not find that his statements constitute a "threat."
IV. Modification of Prior Court Order
Additionally, we reach J.K.S.'s issues concerning Judge pro tempore Reeves' jurisdiction to modify the order Judge Rozar had previously signed establishing the amount J.K.S. was entitled to receive for P.K.L.'s room, board and personal care. Because this appeal concerns a protected person, to reach a complete and proper resolution of this portion of the appeal, we first decide whether Judge Reeves correctly concluded from his review of the annual account that some modification of the prior order was required. Then we must decide whether Reeves, as a commissioner, had authority to make the modification. Finally, assuming he did have jurisdiction, we address whether he erred in issuing the order.
In his review of the account J.K.S. filed, Judge Reeves correctly concluded that a modification of the prior order setting the amount of payment to J.K.S. for P.K.L.'s room, board and personal care was required. At a minimum, the figure set in the order needed to separately set forth the amount covering P.K.L.'s share of household expenses from the amount covering the personal *854 care given by J.K.S., so the court reviewing each yearly account could determine whether the amounts were reasonable. As Judge Reeves stated, it is possible that the overall amount would remain virtually the same. On the other hand, the probate court might find some adjustment needed in the overall amount. For example, if J.K.S. failed to provide meals to P.K.L. out of the amount she is paid that would constitute a change in circumstances.

A. Whether Judge Reeves Qualifies as Judge Pro Tempore

The question arises in this appeal whether Reeves was acting as a commissioner or a judge pro tempore. Consequently, we requested and received additional briefing from the parties on this issue. If Reeves was acting as a commissioner, he was arguably wrong to conclude that he had the authority to modify Judge Rozar's order establishing payment to J.K.S. Rules of the Supreme Court, Rule 91, establishes and defines the powers of court commissioners. However, A.R.S. section 12-141 provides that the Chief Justice of the Arizona Supreme Court may appoint judges pro tempore for a county after receiving a request for such appointments from the presiding judge of that county. The powers and duties of a judge pro tempore are the same as the powers of any other superior court judge. A.R.S. § 12-144(D). Reeves was appointed as a judge pro tempore by the Chief Justice. He therefore possessed all powers of a superior court judge during the relevant time periods in this matter. Pursuant to A.R.S. section 12-144(C), his powers and duties as a judge pro tempore lasted as long as was necessary to issue a final determination on the matters before him. Accordingly, because Reeves was serving as a judge pro tempore, we need not determine whether he could have entered the same order as a commissioner.

B. Whether a Guardian is a Fiduciary with a Duty to Provide an Accounting Statement

Finally, we conclude that the probate court correctly held that a guardian has the same fiduciary obligations to exercise due care in fulfilling his or her duties as does any other fiduciary, including providing a Rule 5.7 accounting statement.
Both the Arizona Probate Code and the M.C.L.R.s expressly state that a guardian is a fiduciary. The term "fiduciary" is specifically defined in the Arizona Probate Code to "includ[e] a personal representative, guardian, conservator, and trustee." A.R.S. § 14-1201(18) (1995) (emphasis added).
Furthermore, the M.C.L.R. governing probate matters explicitly defines guardianships as "fiduciary" matters under the recently enacted M.C.L.R. 5.1 which addresses the scope of probate matters:
The presiding judge of the Superior Court shall designate the judge(s) and/or commissioner(s) of the Probate/Mental Health Department who shall be charged with probate matters, guardianships, conservatorships and other fiduciary matters....
M.C.L.R. 5.1 (effective July 1, 1996) (emphasis added).
The recently adopted M.C.L.R. 5.7(a) expressly states that:
All petitions requesting the approval for the payment of compensation to fiduciaries as defined in A.R.S. § 14-1201 (personal representatives, guardians, conservators and trustees) ... for services rendered ... must be accompanied by a statement of the net value of the estate, together with a detailed statement of the services rendered, including the tasks performed, the date each task was performed, the amount of time involved in performing each task, the name and position of the person who performed each task and the results achieved. The total time, hourly rate, and total charge made by each person must be reported in the detailed statement.... The detailed statement must also include an itemization of costs by date, payee, purpose and amount....
M.C.L.R. 5.7(a) (effective July 1, 1996) (emphasis added).[4] Thus, the newly-revised M.C.L.R. 5.7 dissipates any remaining uncertainty concerning whether a guardian is also *855 a fiduciary, resulting in her duty to provide a Rule 5.7 accounting statement.
Lastly, in many cases, the guardian receives her fees from the conservator. A.R.S. section 14-5312(B) provides:
Any guardian of a ward for whom a conservator also has been appointed shall control the custody and care of the ward and is entitled to receive reasonable sums for his services and for room and board furnished to the ward as agreed upon between him and the conservator if the amounts agreed upon are reasonable under the circumstances. The guardian may request the conservator to expend the ward's estate by payment to third persons or institutions for the ward's care and maintenance.
(Emphasis added.)
If guardians are not required to provide a Rule 5.7 accounting, the probate court's powers to determine the "reasonableness" of compensation by court rule would be completely eviscerated. Moreover, the potential for abuse, particularly the charging of excessive fees, is high if a guardian does not have to account for her services. The potential for abuse when the same person serves as both the guardian and the conservator is significant as in this case. In that situation, the conservator could shield fees from court review by increasing fees claimed as guardian, resulting in a total lack of independent court review of the reasonableness of the fees. That would leave a ward, especially one as incapacitated as P.K.L., completely vulnerable to the unchecked discretion of a guardian exercising almost complete control over him and his estate. J.K.S.'s interpretation of the rules would thus turn the probate court into nothing more than a rubber stamp for requests for approval of guardian fees.
Therefore, we reject J.K.S.'s argument that as a guardian, she does not need to provide a Rule 5.7 accounting statement for her personal services rendered to P.K.L. A.R.S. section 14-1201(18), as well as M.C.L.R. Rules 5.1 and 5.7, specifically state that both a conservator and a guardian are fiduciaries. M.C.L.R. 5.7 also expressly states that guardians, as fiduciaries, have a duty to provide a detailed accounting of all services rendered.
Thus, we affirm Judge pro tempore Reeves's previous order that J.K.S. supply a detailed accounting statement for her services as both conservator and guardian.

REQUEST FOR ATTORNEYS' FEES
J.K.S. requested an award of her attorneys' fees from the state if this court ruled that the probate commissioner acted without jurisdiction. Because we hold that these claims were meritless, her request for attorneys' fees is denied.

CONCLUSION
For the above-stated reasons, we affirm the rulings of the probate court.
WEISBERG and PATTERSON, JJ., concur.
NOTES
[1] For reasons of privacy, the protected person and the current conservator, who is his sister, are referred to herein as P.K.L. and J.K.S. respectively.
[2] Probate Judge pro tempore Kenneth W. Reeves, III, is also a Commissioner. In this opinion, we refer to Judge pro tempore Kenneth W. Reeves, III.
[3] In contrast, the original version of the UPC provided for no accounting from the conservator except upon resignation or removal or upon express direction from the court. See Uniform Probate Code (8 U.L.A.) § 5-418 (1969). Apparently, the drafters of the UPC have found that it is more prudent to require annual accounting and amended section 5-418 to that effect in 1987.
[4] The former M.C.L.R. 5.7 only specified " ... applications of fiduciaries and attorneys ..." without specifically mentioning guardians. However, in practice, the rule was also applied to guardians as well to conservators. In addition, the rule, in its inclusion of guardians as well as conservators, was still consistent with the Arizona legislature's designation of guardians as fiduciaries under A.R.S. section 14-1201(18). Nevertheless, the newly-revised Rule 5.7 specifically includes reference to the A.R.S. section 14-1201 definitions so there will be no ambiguity regarding whether a guardian is a fiduciary and has a duty to account.